UNITED STATES of America,
Plaintiff,

v.

Angela JOHNSON, Defendant.

Nos. CR 00–3034–MWB,
CR 01–3046–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Aug. 13, 2002.

Patrick J. Reinert, Charles J. Williams, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A. Stowers, Rosenberg, Stowers & Morse, Des Moines, IA, Thomas P. Ferichs, Frerich Law Office PC, Waterloo, IA, Patrick J. Berrigan, Watson & Dameron, LLP, Kansas City, MO, Robert R. Rigg, Des Moines, IA, for Defendant.

MEMORANDUM OPINION AND ORDER REGARDING GOVERNMENT'S AMENDMENT TO NOTICE OF INTENT TO USE EVIDENCE AND DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION .................................................1031
 A. Factual Background .......................................1031
 1. The first indictment and Johnson's arrest ...........1031
 2. The informant and his "deliberate elicitation" of incriminating
 statements .........................................1032
 3. The second indictment ...............................1033
 B. Framing Of The Suppression Issues .......................1034
 1. The original notice of intent to use evidence .......1034
 2. The amended notice of intent to use evidence ........1034

II. LEGAL ANALYSIS ..............................................1035
 A. Preliminary Issues ......................................1036
 1. Nature of dispute and burden of proof ...............1036
 2. "Ripeness" issues ...................................1037
 a. Effect of consolidation of trials ...............1037
 b. Effect of rulings on motions for a bill of particulars and to
 dismiss indictment .............................1038
 B. Scope Of The Right To Counsel Under Moulton ............1039
 C. The "Texas v. Cobb" or "Blockburger" Issue .............1040
 1. Texas v. Cobb ......................................1040

 a. *The question and the holding* ...................................1040
 b. *The starting point: McNeil v. Wisconsin* ........................1041
 c. *Brewer and Moulton* .........................................1041
 d. *Rejection of dire predictions* ...................................1042
 e. *Blockburger and the definition of "offense specific"* ...............1042
 f. *Application of the test* ........................................1042
 2. *The Blockburger test* .........................................1043
 a. *The same or separate offenses?* ................................1043
 b. *"Lesser–included" offenses* ...................................1045
 c. *"Predicate" offenses* ........................................1046
 3. *Application of Texas v. Cobb and Blockburger* ......................1048
 a. *Johnson's "discussion/interrogation" argument* ...................1048
 b. *Comparison of statutory elements* .............................1050
 i. *Elements of charges in the first indictment* .................1050
 ii. *Elements of charges in the second indictment* ..............1057
 iii. *Are the offenses "the same" under Blockburger?* ............1060
 c. *Johnson's reliance on factual relationships* .....................1060
 d. *Johnson's reliance on Red Bird* ...............................1062
 e. *"Predicate offense" analysis* .................................1063
 i. *Is the § 371 conspiracy a predicate offense of the § 848*
 *offenses?* ...........................................1063
 ii. *Are the § 1512 offenses predicate offenses of the § 848*
 *offenses?* ...........................................1064
 D. *Johnson's Additional Grounds For Suppression* .........................1067

III. *CONCLUSION* ......................................................1068

This ruling involves the "second front" in a battle over whether the constitutional rights of a defendant accused of crimes carrying the federal death penalty were violated by a jailhouse informant's acquisition of self-incriminating statements from the defendant. The "first front" opened with the government's original notice of intent to use the informant's evidence as to the seven charges in the original indictment against the defendant and her responsive motion to suppress that evidence on the basis of a *"Massiah* violation" [1] of her Sixth Amendment right to counsel. This court suppressed use of the jailhouse informant's evidence as to the crimes charged in the first indictment, *see United States v. Johnson*, 196 F.Supp.2d 795 (N.D.Iowa 2002) (*Johnson I* ), ending the battle on the "first front," at least in this court. However, while the *"Massiah* issue" as to the charges in the first indictment was being litigated, the government

effectively opened a "second front" by obtaining a second indictment against the defendant, which charged her with ten more death-penalty-eligible offenses, then filing an amended notice of its intent to use the jailhouse informant's evidence as to those "new" charges as well. In its ruling suppressing the informant's evidence as to the charges in the first indictment, the court left open for further briefing the question of whether that evidence should also be suppressed as to the charges in the second indictment. Battle was joined in earnest on that issue in a series of supplemental briefs, with a final skirmish by way of oral arguments, and the time is now ripe for the court to attempt to resolve that question.

---

**1.** *See Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

## I. INTRODUCTION

### A. Factual Background

#### 1. The first indictment and Johnson's arrest

Defendant Angela Johnson is being held in the Linn County Jail pending trial on two separate indictments involving charges that grew out of a continuing investigation of the criminal conduct, including drug trafficking, of Johnson's sometime boyfriend, Dustin Honken, and his associates. The first seven-count indictment against Johnson, in Case No. CR 00-3034-MWB, filed on July 26, 2000, charges her with five counts of aiding and abetting the murder of witnesses, one count of aiding and abetting the solicitation of the murder of witnesses, and one count of conspiracy to interfere with witnesses.[2]

2. More specifically, **Count 1** of this first federal indictment is the first of the counts charging what was described above, for shorthand purposes, as "aiding and abetting the murder of a witness." It charges that, on or about July 25, 1993, Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Gregory Nicholson with the intent to prevent Gregory Nicholson from attending or providing testimony at an official proceeding in the Northern District of Iowa—specifically, a criminal prosecution of Dustin Honken on a charge of conspiracy to distribute methamphetamine or to possess methamphetamine with intent to distribute it—and to prevent Gregory Nicholson from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses, specifically, distribution of methamphetamine and conspiracy to distribute methamphetamine, which killing is a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 2** of the indictment is the second charge of "aiding and abetting the murder of a witness." It charges that, on or about July 25, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Lori Duncan (who was Gregory Nicholson's girlfriend) with the intent to prevent Lori Duncan from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, tampering with Gregory Nicholson, a federal witness, and unlawful contact with Gregory Nicholson in contempt of court by violation of conditions of pretrial release by Dustin Honken—which killing was a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Counts 3** and 4 of the indictment are the third and fourth charges of "aiding and abetting the murder of a witness." They charge that, on or about July 25, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Kandi Duncan and Amber Duncan (Lori Duncan's daughters), respectively, with the intent to prevent them from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, tampering with Gregory Nicholson, a federal witness, and unlawful contact with Gregory Nicholson in contempt of court by violation of conditions of pretrial release by Dustin Honken—which killings were first-degree murders, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 5** of the indictment is the last of the five charges of "aiding and abetting the murder of a witness." It charges that, on or about November 5, 1993, Angela Johnson aided and abetted another individual to willfully, deliberately, maliciously, and with premeditation and malice aforethought, unlawfully kill Terry DeGeus with the intent to prevent Terry DeGeus from communicating to a law enforcement officer of the United States information relating to the commission or possible commission of federal offenses—specifically, the distribution of methamphetamine and conspiracy to distribute methamphetamine—which killing was a first-degree murder, as defined by 18 U.S.C. § 1111, all in violation of 18 U.S.C. §§ 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2.

**Count 6** of the indictment was described above, in shorthand terms, as the charge of "aiding and abetting the solicitation of the

A warrant issued for Johnson's arrest on these charges on the same day that the indictment was filed. Johnson was arrested on this federal warrant by officers with the Iowa Department of Criminal Investigation (DCI) on July 30, 2000, the following Sunday. At the request of the Assistant United States Attorney who had obtained the indictment against her, the arresting officers placed Johnson in the Benton County Jail, in Vinton, Iowa, instead of the Linn County Jail, which is just blocks from the federal courthouse in Cedar Rapids, Iowa, where Johnson would ordinarily have been taken. On Monday, July 31, 2000, Johnson was arraigned before a federal magistrate judge in Cedar Rapids. At the time of her arraignment, while represented by court-appointed counsel, Johnson entered a plea of not guilty to all of the charges then made against her. At the arraignment on July 31, 2000, a detention hearing was set for

August 2, 2000, and the Clerk of Court was directed to appoint other counsel to represent Johnson in further proceedings. Johnson was returned to the Benton County Jail where she remained incarcerated, except when she appeared in court, until October 3, 2000, when she was transferred to the Black Hawk County Jail in Waterloo, Iowa.

## 2. The informant and his "deliberate elicitation" of incriminating statements

When Johnson was placed in the Benton County Jail, Robert McNeese, the jailhouse informant in these cases, was already incarcerated there. McNeese was a longtime, thoroughly seasoned informant, known to government officials, including the prosecutor in Johnson's first case, to have a track record of obtaining incriminating evidence from associates and, more specifically, from fellow inmates, even

murder of witnesses." It charges that, between about June 10, 1996, and February 24, 1998, Angela Johnson aided and abetted another individual to solicit, command, induce, and endeavor to persuade Dean Donaldson and Anthony Altimus to engage in conduct constituting a felony that has as an element the use, attempted use, and threatened use of physical force against the person of another in violation of the laws of the United States—specifically, the murders of Timothy Cutkomp and Daniel Cobeen, with the intent to prevent these witnesses' attendance or testimony at a federal drug trial, a second case against Dustin Honken—with the intent that Dean Donaldson and Anthony Altimus engage in such conduct and under circumstances strongly corroborative of that intent, all in violation of 18 U.S.C. §§ 373(a)(1) and 2.

Finally, **Count 7** of the July 26, 2000, indictment charges Johnson with a "conspiracy" offense, described above, in understated terms, as "conspiracy to interfere with witnesses." It actually charges that, between about July 1, 1993, and continuing thereafter until about February 24, 1998, Angela Johnson knowingly and willfully combined, con-

spired, confederated, and agreed with other persons known and unknown to the grand jury to commit offenses against the United States, which were identified as (1) killing or attempting to kill another person with the intent to prevent that person's attendance or testimony at an official proceeding; (2) preventing communication by that person to a law enforcement officer of information relating to the commission or possible commission of a federal offense or violations of conditions of release pending judicial proceedings; (3) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with intent to influence, delay, or prevent testimony of that person at an official proceeding; (4) hindering, delaying, or preventing communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense or a violation of conditions of release pending judicial proceedings; and (5) soliciting, commanding, inducing, and endeavoring to persuade a person to commit a violent felony with intent that such person engage in such conduct under circumstances strongly corroborative of that intent, all in violation of 18 U.S.C. § 373.

where government officials were ignorant of the persons or incidents involved prior to McNeese's revelations. Moreover, unlike the circumstances in the Linn County Jail, male and female inmates in the small Benton County Jail, with its single cell-block, were able to have direct contacts, including face-to-face conversations and note-passing, some of which were facilitated by jail staff. True to form, while Johnson was incarcerated in the Benton County Jail, McNeese, acting as a government agent, deliberately elicited incriminating statements from her in the course of extensive contacts beginning shortly after Johnson arrived at the jail. Although McNeese told government officials that he was having contact with Johnson and obtaining incriminating statements from her in early August, no effective measures were taken to stop such contacts at any time, nor was McNeese given "listening post" instructions, which explained what he could and could not do to obtain information from Johnson without violating her Sixth Amendment rights, until September 11, 2000. McNeese's contacts with Johnson lasted until October 3, 2000, when McNeese ceased to be cooperative with investigators, at which time government officials pulled the plug by sending Johnson and McNeese to separate jails. The circumstances of Johnson's placement in the Benton County Jail, McNeese's "résumé" of cooperation with prosecutors and

law enforcement officers as an informant, and the extensive contacts between Johnson and McNeese are examined in considerably more detail in the court's ruling on the "*Massiah* violation" as to charges in the first indictment. *See Johnson I,* 196 F.Supp.2d at 800–26.

### 3. The second indictment

On August 30, 2001, based in part on evidence provided by McNeese or obtained as a result of information that he provided, a grand jury returned a second indictment against Angela Johnson, the indictment in Case No. CR 01–3046–MWB. The second indictment charges Johnson with five counts of killing witnesses while engaging in a drug-trafficking conspiracy, and five counts of killing witnesses in furtherance of a continuing criminal enterprise (CCE).[3] The government acknowledges that the "conspiracy murder" charges in the first five counts of this second indictment are "lesser-included offenses" of the "CCE murder" charges in the second five counts. One of the critical issues in this case, as shall be explained in more detail below, is the relationship between the charges in the first indictment and the charges in the second indictment, where most of the charges in the two indictments allege Angela Johnson's involvement in the murders of the same five people.

3. More specifically, **Counts 1** through **5** of the second indictment charge that, on or about July 25, 1993, while engaging in an offense punishable under 21 U.S.C. § 841(b)(1)(A) and 846, relating to a conspiracy to manufacture and distribute more than 100 grams of methamphetamine between 1992 and 2000, Angela Johnson intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry De-Geus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. **Counts 6** through **10** charge that, on or about July 25, 1993, Angela Johnson, while working in furtherance of a continuing criminal enterprise between 1992 and 2000 in violation of 21 U.S.C. § 848(c) intentionally killed and counseled, commanded, induced, procured, and caused and aided and abetted the intentional killing of Gregory Nicholson, Lori Duncan, Amber Duncan, Kandi Duncan, and Terry De-Geus, respectively, and that such killings resulted, all in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2.

## B. Framing Of The Suppression Issues

### 1. The original notice of intent to use evidence

On November 14, 2000, the government filed its original Notice of Intent to Use Evidence in Case No. CR 00–3034–MWB,[4] which notified the court and the defendant of the government's intent to introduce at trial evidence of incriminating statements Angela Johnson made to Robert McNeese, along with evidence derived from those statements, including the bodies of five alleged murder victims. The government requested an order finding that the evidence obtained from McNeese would be admissible at Angela Johnson's trial on the charges pending in Case No. CR 00–3034–MWB, that is, the first seven-count indictment against Johnson. The essence of the government's argument, submitted in a brief in support of the Notice, was that the information provided by McNeese had not been obtained in violation of Johnson's Sixth Amendment right to counsel.

Johnson filed an initial resistance to use of McNeese's jailhouse informant evidence on November 27, 2001. She eventually filed a brief in response to the government's Notice of Intent to Use Evidence on April 6, 2001, in which she asserted that McNeese's acquisition of incriminating statements from her violated her Sixth Amendment right to counsel within the meaning of *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and its progeny. Johnson, therefore, requested that the statements and evidence flowing from those statements be suppressed. At this point, the court and the parties agreed that the issue of the admissibility of McNeese's evidence, at least as to the charges in the first indictment, had "morphed" into Johnson's motion to suppress evidence based on a "*Massiah* violation."

On April 11, 12, and 13, 2001, the court held the first of two evidentiary hearings on the alleged "*Massiah* violation." Further episodic submissions of the parties on the "*Massiah* issue" as to the first indictment continued through the next year, including submission of post-hearing briefs, a further hearing on additional evidence, and, finally, oral arguments on January 15, 2002.

Disposition of the "*Massiah* issue" as to the first indictment culminated in a lengthy order, dated April 23, 2002, in which the court denied the government's Notice of Intent to Use Evidence from the jailhouse informant in Case No. CR 00–3034–MWB, to the extent that it sought an order permitting use of such evidence as to charges in the first indictment, and granted Johnson's responsive motion to suppress such evidence, to the extent explained in that ruling, on the basis of a "*Massiah* violation" of Johnson's Sixth Amendment right to counsel. *See Johnson I,* 196 F.Supp.2d at 904. The court suppressed all of Johnson's incriminating statements, including statements that the witnesses were dead and indicating Johnson's involvement in the killings, as well as statements revealing the location of the murder victims' bodies, the bodies themselves, and other evidence of the crimes charged in the first indictment derived from recovery of the bodies. *See id.* at 902–04 (explaining the grounds for suppression in more detail).

### 2. The amended notice of intent to use evidence

That ruling did not completely dispose of the question of what use the govern-

---

4. The Notice was filed and prosecuted by a member of the "taint team," which had been established to insulate prosecutors and investigators assigned to Angela Johnson's cases from direct contact with McNeese, rather than the prosecutor in Johnson's cases.

ment could make of McNeese's evidence, however. On October 29, 2001, prior to the oral arguments on the *"Massiah* issue" as to the first indictment, the government filed an Amendment to Government's Notice of Intent to Use Evidence. In that Amendment, the government advised the defendant and the court of the government's intent to use the evidence obtained by McNeese against Johnson on the charges contained in the *second* indictment, which had been filed on August 30, 2001, under the authority of the Supreme Court's decision in *Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).

In the litigation of the *"Massiah* issue" in Johnson's case, this court found that the parties made at least passing arguments regarding the scope of preclusion of evidence as the result of a *"Massiah* violation" based on *Texas v. Cobb.* However, before considering whether evidence from McNeese should also be precluded as to charges in the second indictment, the one in Case No. CR 01–3046–MWB, in light of the court's finding in Case No. CR 00–3034–MWB that there had been a *"Massiah* violation,"* the court believed that further briefing of the issue was necessary. Therefore, at the conclusion of its ruling on the *"Massiah* issue" with regard to the first indictment, the court established a briefing schedule concerning whether evidence obtained from Johnson by McNeese should also be precluded in Case No. CR 01–3046–MWB. It is the government's Amendment to its Notice of Intent to Use Evidence, regarding use of McNeese's testimony at a trial on the charges in the second indictment, and the parties' arguments thereon made in supplemental briefs filed at the court's direction, that are now before the court.

Some extensions of the original briefing schedule became necessary, but on May 22, 2002, Johnson filed her Supplemental Brief and Argument, seeking suppression of McNeese's evidence as to the charges in the second indictment. The government filed its Supplemental Memorandum Regarding Admissibility of Evidence on June 14, 2002, in which the government incorporated by reference the arguments in its October 29, 2001, Amendment to Government's Notice of Intent to Use Evidence, as well as responses to Johnson's arguments for suppression of that evidence in her May 22, 2002, supplemental brief. On June 24, 2002, Johnson filed her Reply to Government's Supplemental Memorandum Regarding Admissibility of Evidence.

By order dated July 22, 2002, the court scheduled telephonic oral arguments for August 2, 2002, on the question of whether McNeese's evidence should also be suppressed as to charges in the second indictment. The court heard those oral arguments as scheduled. Therefore, the question of whether or not the jailhouse informant's evidence must be suppressed as to the charges in the second indictment, as it has been with respect to the charges in the first indictment, is now fully submitted.

## II. LEGAL ANALYSIS

Johnson's contentions in the present dispute regarding the violation of her constitutional rights as to the charges in the second indictment range well beyond a *"Massiah* violation" of her Sixth Amendment right to counsel and the related *"Texas v. Cobb* issue" presaged in briefing before the court suppressed McNeese's evidence as to charges in the first indictment. Her contentions also include, among other issues, the following arguments: (1) that McNeese deliberately interfered with her attorney-client relationship by making derogatory remarks about the legal abilities of her principal counsel and attempting to supplant her attorney's

advice with his own; (2) that McNeese interrogated her in the absence of counsel, and without obtaining any waiver of her right to counsel, in violation of her rights as established in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); and (3) that government counsel violated disciplinary rule DR7–104, which concerns communication by counsel with a party known to be represented by other counsel regarding the subject of representation. The court will consider, to the extent necessary, Johnson's various grounds for suppression of the evidence obtained by McNeese as to the charges in the second indictment. However, the court must first resolve some preliminary issues, which include the question of whether the court should even address, at this time, the issue of suppression of McNeese's evidence as to the charges in the second indictment.

### A. Preliminary Issues

#### 1. Nature of dispute and burden of proof

The government fired the opening salvo on the question of whether the government can use evidence from McNeese, the jailhouse informant, against Johnson in attempting to prove the charges in the second indictment when it filed its October 29, 2001, Amendment to Government's Notice of Intent to Use Evidence. Nevertheless, the court concludes that this issue, like the question of the use of the informant's evidence as to the charges in the first indictment, has "morphed" into Johnson's motion to suppress the evidence. This is so, in light of Johnson's contentions in her Supplemental Suppression Brief and Argument, filed May 22, 2002, that McNeese's evidence should also be suppressed as to the charges in the second indictment, owing to various violations of her constitutional rights and ethical standards by the government.

■ As this court noted in *Johnson I,* " '[g]enerally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights.' " *Johnson I,* 196 F.Supp.2d at 841 (quoting *United States v. Guerrero–Barajas,* 240 F.3d 428, 432 (5th Cir.2001), *cert. denied,* 534 U.S. 1113, 122 S.Ct. 919, 151 L.Ed.2d 884 (2002)). This court also noted that " '[t]here are situations, however, where the burden shifts to the government.' " Id. (again citing *Guerrero–Barajas,* 240 F.3d at 432). In *Johnson I,* this court concluded that it need not decide the question of whether an alleged "*Massiah* violation" presents one of those situations in which the burden shifts to the government on a motion to suppress evidence, because Angela Johnson's counsel expressly conceded that Johnson bears the burden of proving a "*Massiah* violation" by the preponderance of the evidence, and the government had not contested either that allocation or quantification of the burden of proof. *Id.* Thus, in *Johnson I,* the court proceeded on the assumption that, on a pre-trial motion to suppress evidence, Johnson bore the burden of proving her claim of a "*Massiah* violation" by the preponderance of the evidence.

■ Although there was no such concession regarding the allocation and quantification of the burden of proof with regard to the present dispute, and even though the present dispute involves a different set of charges in a second indictment, and hence may involve substantially different issues, the court concludes that the present dispute is really a continuation of the dispute about whether McNeese's evidence of Johnson's self-incriminating statements must be suppressed. Therefore, the court

finds that it is appropriate to allocate the burden of proof once again to the defendant. However, the court also notes that it has already engaged in all or nearly all of the necessary factfinding, concerning McNeese's "agency" and the manner in which he obtained the self-incriminating statements from Johnson. Therefore, the issues presented with regard to suppression of the informant's evidence as to charges in the second indictment are primarily legal, rather than factual.

### 2. *"Ripeness" issues*

### a. *Effect of consolidation of trials*

■ At the oral arguments on August 2, 2002, Johnson reiterated an argument, first raised in response to the court's order for further briefing, that the court need not reach the question of the admissibility of McNeese's evidence as to the second indictment, because the two indictments had been consolidated for a single trial. When she first raised the argument, Johnson asserted that, because (1) the two cases have been consolidated and set for trial together, (2) the court's suppression order of April 23, 2002, renders the suppressed evidence inadmissible in any trial of any offenses to which Johnson's Sixth Amendment right to counsel had attached, and (3) the government has not moved to sever trial on the two indictments, "there would appear to be nothing further that the defendant could request from the court that has not already been granted." Therefore, Johnson argued that the court should require the government to proceed first in the supplemental briefing, thereby giving the defendant something to respond to. At the oral arguments on August 2, 2002, Johnson again argued that there is no authority for using evidence tainted as to one set of charges solely as to other charges, where all of the charges have been consolidated for a single trial, and until and unless the government moves to

sever the trials on the two indictments, there is really nothing to be decided regarding use of McNeese's evidence as to the charges in the second indictment.

The court finds these arguments unpersuasive for the same reasons that the court rejected them the first time around. As the court's order of April 23, 2002, should have made clear, McNeese's evidence has not been suppressed as to the charges in Case No. CR 01–3046–MWB, because the court declined to address that question without further briefing. Johnson appears to confuse the question of *admissibility* of the evidence at a consolidated trial on both indictments, where the evidence has been *suppressed on constitutional grounds* as to the charges in only one indictment—a question controlled primarily by Rule 403 of the Federal Rules of Evidence—with the question of whether the evidence must by *suppressed* in the later case as well as the earlier one—a question governed by Sixth Amendment standards as embodied in *Massiah* and its progeny, including *Texas v. Cobb*, and other constitutional and ethical principles that Johnson now asserts for the first time.

Moreover, at the oral arguments, the government pointed out that the two cases have only been provisionally consolidated, for the purposes of efficient trial preparation, but that the consolidation was subject to later motions to sever by either party. The government also represented that it would move to sever, should it be necessary to permit use of McNeese's evidence at the trial of the charges in the second indictment. Indeed, a determination on the constitutionality question may well determine whether it is necessary for the government to move to sever the trial on the charges in the two cases to preserve the *admissibility* of the evidence at trial of the charges in Case No. CR 01–3046–MWB, even if the court determines that

the evidence need not be *suppressed* in that case on constitutional grounds; conversely, no motion to sever is required if the evidence is *suppressed* in both cases.

In *United States v. McAllister*, 225 F.3d 982 (8th Cir.2000), the Eighth Circuit Court of Appeals set out the standards for determination of the "ripeness" of a constitutional question, as follows:

> As we have previously explained,
>
> > [i]n order to establish that a claim is ripe for judicial review, a plaintiff must meet two requirements. First, it must demonstrate a sufficiently concrete case or controversy within the meaning of Article III of the Constitution. *Bob's Home Service, Inc. v. Warren County*, 755 F.2d 625, 627 (8th Cir.1985). Second, prudential considerations must justify the present exercise of judicial power.
>
> *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269, 1272–73 (8th Cir. 1994). "The basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945); *see Vorbeck v. Schnicker*, 660 F.2d 1260, 1266 (8th Cir.1981) (noting that only "a definite and concrete controversy" satisfies the requirements of Article III).

*McAllister*, 225 F.3d at 989. The court concludes that there is a "live" controversy here concerning whether Johnson's constitutional rights were violated by McNeese's acquisition of evidence regarding the offenses later charged in the second indictment. Because any violation has already occurred, what is presented is a concrete case or controversy, in which the parties plainly have conflicting contentions and adverse legal interests, and the purported violations still threaten dire consequences to Johnson, making the controversy considerably more than "hypothetical" or "abstract," so that the present exercise of judicial power to determine the constitutional issues is justified. *Id.* The court can—indeed, it must—address the question of whether McNeese's evidence can be used as to the charges in the second indictment without violating *constitutional* principles before the charges in the second indictment can be brought to trial.

### b. *Effect of rulings on motions for a bill of particulars and to dismiss indictment*

■ By order dated June 21, 2002, this court granted Johnson's motion for a bill of particulars with regard to all ten counts of the second indictment, on appeal of a magistrate judge's Report and Recommendation recommending a bill of particulars only as to the first five counts. *See United States v. Johnson*, 225 F.Supp.2d 982 (N.D.Iowa 2002) (*Johnson II*). Subsequently, by order dated June 24, 2002, this court dismissed Counts 6 through 10 of the second indictment, on the ground that those counts failed to meet applicable requirements for pleading "CCE murder." *See United States v. Johnson*, 225 F.Supp.2d 1009 (N.D.Iowa 2002) (*Johnson III*). However, the dismissal of Counts 6 through 10 of the second indictment was expressly stated to be "**without prejudice** to a superseding indictment satisfying the requirements stated herein for pleading such charges." *Johnson III*, 225 F.Supp.2d at 1022 (emphasis in the original). Furthermore, the charges in Counts 1 through 5 of the second indictment are purportedly "lesser-included offenses" of the charges in Counts 6 through 10 of the

second indictment. Consequently, if Counts 1 through 5 charge only the "same offenses" as are charged in the first indictment, the same would necessarily be true of Counts 6 through 10. Therefore, the court concludes that whether or not McNeese's evidence must be suppressed as to any or all of the charges in the second indictment still presents a "live" controversy.

With these matters resolved, the court turns to the question of whether the evidence in question was obtained in violation of Johnson's constitutional rights with respect to the charges in the second indictment.

### B. Scope Of The Right To Counsel Under Moulton

As this court explained in *Johnson I,* analysis of the question of the government's ability to use McNeese's jailhouse informant evidence against Johnson at trial of the charges in the second indictment at least begins with the Supreme Court's decision in *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985):

> [I]n its discussion of attachment of the defendant's Sixth Amendment right [above], the court pointed out that Sixth Amendment rights are "offense-specific," and that Johnson's Sixth Amendment rights had attached only to the offenses charged in the first indictment at the time McNeese deliberately elicited incriminating statements from her. The specific holding on this point in *Moulton,* this court noted, was as follows: "[I]ncriminating statements pertaining to *pending charges* are *inadmissible at the trial of those charges,* notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel," *but* "[i]ncriminating statements *pertaining to other crimes,* as to which the Sixth

Amendment right has not yet attached, are, of course, admissible *at a trial of those offenses."* [*Moulton,* 474 U.S.] at 180 n. 16, 106 S.Ct. 477 (emphasis added).

*Johnson I,* 196 F.Supp.2d at 895–96; *see also id.* at 843–46 (also discussing this portion of the *Moulton* decision). At least in the first instance, this court noted that *Moulton* had the following impact on the attachment of Johnson's Sixth Amendment right to counsel:

> At the time that McNeese obtained purportedly incriminating statements from Johnson, she had been charged with the following offenses in the indictment filed July 26, 2000: Five counts of killing witnesses in violation of 18 U.S.C. §§ 1512(a)(1)(A) and/or (C), 1512(a)(2)(A), 1111, and 2; one count of soliciting a violent felony (the murder of witnesses to prevent them from testifying in federal proceedings), in violation of 18 U.S.C. §§ 373(a)(1) and 2; and one count of conspiring to commit the substantive offenses charged, in violation of 18 U.S.C. § 371. It is these offenses as to which Johnson's Sixth Amendment right to counsel had attached at the time she had any contact with Robert McNeese, as required for proof of the first prong of her alleged *"Massiah* violation."

> On the other hand, at the time she had contact with Robert McNeese, Johnson's Sixth Amendment right to counsel had not attached as to the ten counts of the indictment filed almost a year later in Case No. CR 01–3046–MWB on August 30, 2001.[T]he second indictment charges five counts of killing witnesses while engaging in a drug-trafficking conspiracy, and five counts of killing witnesses in furtherance of a continuing criminal enterprise.

*Johnson I,* 196 F.Supp.2d at 846 (footnote and internal cross-references omitted). Indeed, were *Moulton* the last word on the matter, applying what appears to be its simple "charged-uncharged" or "pending charges-other crimes" dichotomy for attachment of the Sixth Amendment right to counsel, it appears that the government would be able to use McNeese's evidence against Johnson on the charges in the second indictment, because those charges were not pending at the time that McNeese deliberately elicited incriminating statements from Johnson in violation of her Sixth Amendment right to counsel.

However, *Moulton* actually framed the issue in terms of using "[i]ncriminating statements pertaining to other crimes, *as to which the Sixth Amendment right has not yet attached.*" *Moulton,* 474 U.S. at 180 n. 16, 106 S.Ct. 477 (emphasis added). *Moulton* was not the last word on what offenses constitute "other crimes ... as to which the Sixth Amendment right to counsel has attached," as the parties have recognized in their various arguments. Rather, the primary contentions of both parties concerning use of McNeese's evidence as to charges in the second indictment center on the impact of the Supreme Court's more recent decision in *Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001), which takes up the issue identified, but not specifically addressed, in *Moulton:* To what crimes other than those identified in pending charges has a defendant's Sixth Amendment right to counsel *already* attached? Therefore, like the parties, the court will continue its analysis with consideration of the Supreme Court's decision in *Texas v. Cobb.*

## C. The "Texas v. Cobb" or "Blockburger" Issue

### 1. Texas v. Cobb

#### a. The question and the holding

In *Texas v. Cobb,* the Supreme Court "granted certiorari to consider ... whether the Sixth Amendment right to counsel extends to crimes that are 'factually related' to those that have actually been charged," a question the Court answered "in the negative." *Texas v. Cobb,* 532 U.S. at 167, 121 S.Ct. 1335.[5] Rather, the Court held "that our decision in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), meant what it said, and that the Sixth Amendment right is 'offense specific.'" *Texas v. Cobb,* 532 U.S. at 164, 121 S.Ct. 1335. However, the Court also concluded that the Sixth Amendment right to counsel does extend to offenses that, even if not formally charged, would be considered the "same offense" under the *"Blockburger* test" established in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See, e.g., Texas v. Cobb,* 532 U.S. at 173, 121 S.Ct. 1335. Thus, in this sense, *Texas v. Cobb* takes up where the Supreme Court's decision in *Moulton* left off on the question of what charges fall within the scope of a defendant's Sixth Amendment right to counsel: While *Moulton* considered attachment of the Sixth Amendment right to counsel primarily in terms of whether the offenses had been charged or not, leaving open the question of what other charges might fall within the scope of the right to counsel, the Court's decision in *Texas v. Cobb* considered that open question directly, recognizing that the Sixth Amendment right to counsel has also

---

**5.** The Court also granted certiorari in *Texas v. Cobb* to answer the question of "whether the respondent made a valid unilateral waiver of [his Sixth Amendment right to counsel] in this case," but, because the Court answered the question regarding the scope of the Sixth Amendment right to counsel in the negative, the Court did not reach this second question. *Texas v. Cobb,* 532 U.S. at 167, 121 S.Ct. 1335.

attached to a subsequently charged offense, if that subsequently charged offense is really the "same offense" as a previously charged offense to which the right to counsel has already attached.

### b. The starting point: McNeil v. Wisconsin

In arriving at its answer to the question presented in *Texas v. Cobb*, the Court began by reiterating its holding in *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), that the Sixth Amendment right to counsel is "offense specific," such that "a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." *See Texas v. Cobb*, 532 U.S. at 167–68, 121 S.Ct. 1335 (citing *McNeil*, 501 U.S. at 175–76, 111 S.Ct. 2204). The Court in *Texas v. Cobb* observed that "[s]ome state courts and Federal Courts of Appeals ... have read into *McNeil's* offense-specific definition an exception for crimes that are 'factually related' to a charged offense." *Id.* at 168, 121 S.Ct. 1335. As framed by the Texas Court of Appeals in the decision below, the "factually related" test extended the Sixth Amendment right to counsel to include, besides charged offenses, "any other offense that is very closely related factually to the offense charged," or "factually interwoven with" the charged offense. *See id.* at 167, 121 S.Ct. 1335. However, in *Texas v. Cobb*, the Supreme Court specifically declined to adopt such a rule. *Id.* at 168, 121 S.Ct. 1335. Thus, while *Texas v. Cobb* confirmed that the right to counsel attaches to "other crimes" beyond those already charged—a possibility recognized in

*Moulton*—it rejected a broader test applied by some lower courts for determining what those "other crimes" might be.

### c. Brewer and Moulton

In *Texas v. Cobb*, the Court explained that the reliance that courts espousing the "factually related" rule had placed on two of the Court's pre-*McNeil* decisions— *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977),[6] and *Moulton*[7]—was misplaced. More specifically, the Court rejected the respondent's suggestion "that *Brewer* implicitly held that the right to counsel attached to the factually related murder when the suspect was arraigned on the abduction charge." *Texas v. Cobb*, 532 U.S. at 169, 121 S.Ct. 1335. Rather, the Court explained in *Texas v. Cobb* that "[t]he Court's opinion [in *Brewer*] ... simply did not address the significance of the fact that the suspect had been arraigned only on the abduction charge, nor did the parties in any way argue this question." *Id.* The Court also concluded that *Moulton* was "unhelpful," notwithstanding the respondent's contention in *Texas v. Cobb* that, "in affirming reversal of both the theft and burglary charges, the *Moulton* Court must have concluded that Moulton's Sixth Amendment right to counsel attached to the burglary charge." *Texas v. Cobb*, 532 U.S. at 169–70, 121 S.Ct. 1335. The Court in *Texas v. Cobb* explained that "the *Moulton* Court did not address the question now before us, and to the extent *Moulton* spoke to the matter at all, it expressly referred to the offense-specific nature of the Sixth Amendment right to counsel." *Id.* at 170–71, 106 S.Ct. 477 (quoting *Moulton*, 474 U.S. at 179–80,

---

6. The facts, contentions, and holding of the Court in *Brewer* were discussed extensively in *Johnson I. See, e.g., Johnson I*, 196 F.Supp.2d at 830–32.

7. The facts, contentions, and holding of the Court in *Moulton* were also discussed extensively in *Johnson I. See, e.g., Johnson I*, 196 F.Supp.2d at 834–37.

106 S.Ct. 477, and also citing *id.* at 168, 177, 106 S.Ct. 477).

#### d. Rejection of dire predictions

The Court in *Texas v. Cobb* was equally unmoved by the respondent's prediction "that the offense-specific rule will prove 'disastrous' to suspects' constitutional rights and will 'permit law enforcement officers almost complete and total license to conduct unwanted and uncounselled interrogations.' " *Id.* at 171, 121 S.Ct. 1335 (quoting respondent's brief). The Court concluded that the respondent "fails to appreciate the significance of two critical considerations," which are (1) that "there can be no doubt that a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct custodial interrogations," *id.* at 171, 121 S.Ct. 1335 (citing *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); and (2) that "it is critical to recognize that the Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." *Id.* at 171–72, 121 S.Ct. 1335. It is worth mentioning that, in the present case, Johnson also alleges a violation of *Miranda* and related principles, so that she contends that the alternative protection identified by the Court in *Texas v. Cobb* was not available to her. However, for now, the court will not pursue that tangent, but will instead continue to focus on the *"Texas v. Cobb* issue."

#### e. Blockburger and the definition of "offense specific"

Having rejected one test, the Court in *Texas v. Cobb* next turned to identification of the proper test of "offense specific" attachment of the Sixth Amendment right to counsel:

> Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, we have recognized in other contexts that the definition of an "offense" is not necessarily limited to the four corners of a charging instrument. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), we explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.,* at 304, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. We have since applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the "same offence." *See, e.g., Brown v. Ohio,* 432 U.S. 161, 164–166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). We see no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel. *Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockburger test.*

*Texas v. Cobb,* 532 U.S. at 172–73, 121 S.Ct. 1335 (emphasis added).

Next, the 5–4 majority in *Texas v. Cobb* rejected the arguments of the dissenters:

> While simultaneously conceding that its own test "lacks the precision for which police officers may hope," *post,* at 1350, the dissent suggests that adopting *Blockburger's* definition of "offense" will prove difficult to administer. But it is the dissent's vague iterations of the " 'closely related to' " or " 'inextricably intertwined with' " test, *post,* at 1350, that would defy simple application. The dissent seems to presuppose that offi-

cers will possess complete knowledge of the circumstances surrounding an incident, such that the officers will be able to tailor their investigation to avoid addressing factually related offenses. Such an assumption, however, ignores the reality that police often are not yet aware of the exact sequence and scope of events they are investigating—indeed, that is why police must investigate in the first place. Deterred by the possibility of violating the Sixth Amendment, police likely would refrain from questioning certain defendants altogether.

*Id.* at 173–74, 121 S.Ct. 1335.

### f. Application of the test

Finally, the Court applied *Blockburger* to the question of whether the burglary offense with which the defendant in *Texas v. Cobb* was originally charged was the "same offense" as the murders with which he was subsequently charged and to which he confessed, prior to indictment, during interrogation in the absence of counsel:

> At the time he confessed to Odessa police, respondent had been indicted for burglary of the Owings residence, but he had not been charged in the murders of Margaret and Kori Rae. As defined by Texas law, burglary and capital murder are not the same offense under *Blockburger.* Compare Texas Penal Code Ann. § 30.02(a) (1994) (requiring entry into or continued concealment in a habitation or building) with § 19.03(a)(7)(A) (requiring murder of more than one person during a single criminal transaction). Accordingly, the Sixth Amendment right to counsel did not bar police from interrogating respondent regarding the murders, and respondent's confession was therefore admissible.

*Texas v. Cobb,* 532 U.S. at 174, 121 S.Ct. 1335. Because the application of the *Blockburger* test in *Texas v. Cobb* is so strikingly brief, but its impact can be so significant, this court finds that it is appro-priate to consider the *Blockburger* test in more detail.

### 2. The Blockburger test

### a. The same or separate offenses?

■ As noted in *Texas v. Cobb,* under *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180 (deriving this test from *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489 (1911), and holding that the defendant committed two offenses, even though there was only one sale of narcotics, because the two sections of the statute that were violated defined separate offenses under this test); *see also Texas v. Cobb,* 532 U.S. at 173, 121 S.Ct. 1335 (quoting this language from *Block-burger* ). Thus, "[i]f each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied [and the offenses are not the 'same offense'], notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Moreover, "[t]his holds true despite the fact that [the offenses] arose out of the same course of conduct." *United States v. Gardner,* 65 F.3d 82, 85 (8th Cir.1995), *cert. denied,* 516 U.S. 1064, 116 S.Ct. 748, 133 L.Ed.2d 696 (1996).

Just as the Court in *Texas v. Cobb* held that the *Blockburger* test was applicable to determination of the scope of the Sixth Amendment right to counsel, thereby rejecting the "factually related" test, the Court had previously held that the *Block-burger* test was applicable to the determination of the scope of the double jeopardy clause, also thereby rejecting a different

test. As the Eighth Circuit Court of Appeals explained in *United States v. Turner,* 130 F.3d 815, (8th Cir.1997), *cert. denied,* 524 U.S. 909, 118 S.Ct. 2071, 141 L.Ed.2d 147 (1998), in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), "the Supreme Court declared that the double jeopardy clause bars a subsequent prosecution if, 'to establish an essential element of [the] offense charged in [the second] prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.'" *Turner,* 130 F.3d at 818 (quoting *Grady,* 495 U.S. at 510, 110 S.Ct. 2084). However, the *Turner* court explained, in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court "squarely overruled the principle announced in *Grady.*" *Turner,* 130 F.3d at 818. Instead, "[i]n an extended discussion [in *Dixon* ], the Supreme Court established that the '*only* . . . test,*' Dixon,* 509 U.S. at 708, 113 S.Ct. at 2862 (emphasis in original), for double jeopardy purposes when the offenses are alleged to be the 'same'—and no issue of lesser included charges is involved, *id.* at 705–07, 707 n. 11, 113 S.Ct. at 2860–61 n. 11—is the 'same-elements test [from *Blockburger* ], . . . [which] inquires whether each offense contains an element not contained in the other,' *id.* at 696, 113 S.Ct. at 2855." *Turner,* 130 F.3d at 818 (citing *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180, and *Gavieres,* 220 U.S. at 344–45, 31 S.Ct. 421); *accord McIntyre v. Caspari,* 35 F.3d 338, 340 (8th Cir.1994) (also recognizing that *Dixon* overruled the *Grady* test as "unworkable," making clear that the proper test is the *Blockburger* "same elements" test), *cert. denied,* 514 U.S. 1077, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995). It follows that the "same-conduct test" of *Grady, see McIntyre,* 35 F.3d at 340 (so describing the defunct test from *Grady* ), is *also* inapplicable to determination of the scope of the Sixth Amendment right to counsel, in light of the Supreme Court's selection of *Blockburger* as the appropriate test in that context, as well, in *Texas v. Cobb,* particularly when the Court observed that it could "see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." *Texas v. Cobb,* 532 U.S. at 173, 121 S.Ct. 1335.

Similarly, the conclusion of the Eighth Circuit Court of Appeals that there never has been a "same evidence test" for double jeopardy purposes seems equally forceful in the context of the Sixth Amendment right to counsel. In *United States v. Rodgers,* 18 F.3d 1425 (8th Cir.1994), the Eighth Circuit Court of Appeals rejected the defendants' double-jeopardy argument that the government used the same evidence against them at both trials, because "[t]here is no 'same-evidence' test to prohibit the government from using the same evidence to prove two different offenses." *See Rodgers,* 18 F.3d at 1429. Indeed, the court wrote, "Even *Grady* 's same-conduct test (now overruled) did not amount to a same-evidence test," *id.* (citing *Grady,* 495 U.S. at 521, 110 S.Ct. 2084), and the court was instead "bound by *Dixon* to follow the [*Blockburger* ] 'same elements' test." *Id.; cf. Iannelli,* 420 U.S. at 785 n. 17, 95 S.Ct. 1284 ("substantial overlap" in proof does not establish that offenses are the "same offense"). This court believes itself to be equally bound to reject a "same evidence" test for purposes of the Sixth Amendment right to counsel, based on the Supreme Court's selection, in *Texas v. Cobb,* of the *Blockburger* "same elements" test as applicable in that context.

Moreover, the Eighth Circuit Court of Appeals and the Supreme Court have both recognized that "[a] single transaction comprising a conspiracy can give rise to distinct offenses under separate statutes without violating the Double Jeopardy

Clause." *United States v. Holloway*, 128 F.3d 1254, 1257 (8th Cir.1997) (citing *Albernaz v. United States*, 450 U.S. 333, 339–40, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), as holding that a single conspiracy, which included both importation and distribution of marijuana, could be charged as two distinct offenses). In *Holloway*, the Eighth Circuit Court of Appeals applied this rule to a defendant's double jeopardy argument regarding charges of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (Count One), and conspiracy to provide a controlled substance (heroin) to an inmate in a federal prison, in violation of 18 U.S.C. § 371 (Count Three). *Id.* at 1255. In other words, the two conspiracies at issue involved precisely the same goal, distribution of heroin, and as a matter of fact, both involved distribution of heroin to an inmate in a federal prison. Nevertheless, after identifying the elements of the two conspiracy offenses charged in the indictment, the court concluded that they were not the "same offense":

> In this case, the underlying offense to Count One, unlike that of Count Three, required the knowing and unlawful possession of a controlled substance. Count Three, on the other hand, required proof of an overt act and the presence of a scheme to provide a prohibited object to a federal inmate. Reciprocally distinguishable and independent conspiracies, regardless of their overlapping goals, do not offend *Blockburger* principles. *American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946).

*Holloway*, 128 F.3d at 1257–58. Again, the reasoning of *Texas v. Cobb* would make this conclusion under *Blockburger* equally applicable to the scope of the Sixth Amendment right to counsel.

■ Thus, this court concludes that, for purposes of determining the scope of either the double jeopardy clause or the Sixth Amendment right to counsel, offenses in separate charges or separate indictments are not the "same offense" simply (1) because they are "factually related," or arise from the same transaction or course of conduct, *see Texas v. Cobb*, 532 U.S. at 167–71, 121 S.Ct. 1335 (rejecting the "factually-related" test); *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180 (same transaction), *Gardner*, 65 F.3d at 85 (same course of conduct); (2) because proof of an element of one offense is based on conduct that constitutes an offense for which the defendant has already been charged or prosecuted, *see Dixon*, 509 U.S. at 708, 113 S.Ct. 2849 (expressly overruling the same-conduct test from *Grady*); *Turner*, 130 F.3d at 818; *McIntyre*, 35 F.3d at 340; (3) because proof of the two offenses uses the same or substantially overlapping evidence, *see Iannelli*, 420 U.S. at 785 n. 17, 95 S.Ct. 1284 ("substantial overlap"); *Rodgers*, 18 F.3d at 1429 (same evidence); or (4) because the same transaction allegedly was part of two charged conspiracies. *See Holloway*, 128 F.3d at 1257–58.

### b. *"Lesser-included" offenses*

■ On the other hand, "[i]n subsequent applications of the [*Blockburger*] test, [the Supreme Court has] often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other." *Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996); *see also Turner*, 130 F.3d at 818 (describing the elements of the lesser-included offense as a "subset" of the elements of the greater offense). Thus, while it may be "perfectly clear that [the second] offense requires proof of a number of elements that need not be established in [the first offense], ... [t]he *Blockburger* test

requires [the court] to consider whether the converse is also true—whether the [first] offense requires proof of any element that is not part of the [second] offense." *Rutledge*, 517 U.S. at 298, 116 S.Ct. 1241.

The Supreme Court's decision in *Rutledge* demonstrates this principle by applying it to two kinds of offenses of interest here, conspiracy in violation of 21 U.S.C. § 846, and a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848. *Rutledge*, 517 U.S. at 294, 116 S.Ct. 1241. The Court noted that, in the case before it, "[t]he 'in concert' element of [the] CCE offense was based on the same agreement as the § 846 conspiracy." *Id.* However, the Court rejected the government's argument that the "in concert" requirement of the CCE offense might be satisfied by something less than the actual agreement required by the conspiracy offense. *Id.* at 298–99, 116 S.Ct. 1241. Instead, the Court held, "For the reasons set forth in *Jeffers* [*v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) ], and particularly because the plain meaning of the phrase 'in concert' signifies mutual agreement in a common plan or enterprise, ... this element of the CCE offense requires proof of a conspiracy that would also violate § 846." *Id.* at 299, 116 S.Ct. 1241. Once the Court had established that the "in concert" element of the CCE offense and the "agreement" element of the conspiracy offense were the same, the Court's "same offense" analysis consisted of the following:

> Because § 846 does not require proof of any fact that is not also a part of the CCE offense, a straightforward application of the *Blockburger* test leads to the conclusion that conspiracy as defined in § 846 does not define a different offense from the CCE offense defined in § 848. Furthermore, since the latter offense is the more serious of the two, and because only one of its elements is necessary to prove a § 846 conspiracy, it is appropriate to characterize § 846 as a lesser included offense of § 848.

*Rutledge*, 517 U.S. at 299, 116 S.Ct. 1241; *United States v. Jefferson*, 215 F.3d 820, 823 (8th Cir.) (a drug conspiracy is, as a matter of law, a lesser-included offense of a CCE offense based on drug-trafficking), *cert. denied*, 531 U.S. 911, 121 S.Ct. 261, 148 L.Ed.2d 189 (2000). Thus, a "lesser-included offense" is the "same offense" as a "greater" offense, and *vice versa*, for double jeopardy purposes, and may not be prosecuted in consecutive trials. Pursuant to *Texas v. Cobb*, they are also the "same offense" for purposes of the Sixth Amendment, such that the right to counsel attaches to both the lesser offense and the greater offense at the time that either offense is charged.

#### c. "Predicate" offenses

In *United States v. Allen*, 247 F.3d 741 (8th Cir.2001), *cert. granted and judgment vacated on other grounds*, —— U.S. ——, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002),[8] the Eighth Circuit Court of Appeals considered application of the *Blockburger* test to another category of offenses, "predicate" offenses. The court finds that *Allen* is of particular interest here.

---

**8.** The decision in *Allen* was vacated for reconsideration in light of *Ring v. Arizona*, 536 U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). *See Allen v. United States*, —— U.S. ——, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002). The Supreme Court's decision in *Ring* overruled *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), to hold that even after jury adjudication of a defendant's guilt on a charge of first-degree murder, determination by the trial judge, sitting alone, of the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty violates the Sixth Amendment right to a jury trial in capital prosecutions.

In Allen, the court considered whether armed bank robbery by force or violence in which a killing occurred, as defined by 18 U.S.C. §§ 2113(a) and (e), and carrying or using a firearm during a crime of violence and committing murder, as defined by 18 U.S.C. § 924(c)(1) and (j)(1), were the "same offense" under *Blockburger*. *Allen*, 247 F.3d at 755. In Allen, the court noted that, on the face of the statutes defining the offenses, the § 924 firearm offense requires proof of a fact that the § 2113 offense does not, "namely, that a firearm was used or carried during the commission of a violent crime and that a murder occurred by use of the firearm." *Id.* at 767. The court found that the more difficult question was the "converse" issue, of whether the § 2113 offense required an element that the § 924 offense did not, because "[i]t is not exactly clear how predicate offenses are to be treated for purposes of *Blockburger*." *Id.* at 767–68. The court observed, "There is some indication from the Supreme Court that *Blockburger* is simply a rule of statutory construction which is neither intended nor designed to apply to the particular facts of a case." *Id.* at 768 (citing *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), and *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180). If *Blockburger* was applied in that way, "[l]ooking solely at the elements of the offenses," the court in *Allen* concluded that the § 2113 offense was not the same as the § 924 offense, because the § 924 offense "does not require proof of a taking of bank property by force or violence or intimidation, but rather only proof of some underlying crime of violence which could be armed robbery or any other violent felony." Id.

"On the other hand," the court in *Allen* observed, "the Supreme Court has applied *Blockburger* by considering the nature of the underlying felony in a felony-murder indictment rather than based only on the elements of the statutes at issue." *Id.* (citing *Whalen v. United States*, 445 U.S. 684, 694–95, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), which found that rape and killing in the course of a rape, expressly defined as a species of felony murder under the laws of the District of Columbia, were not separate offenses under the *Blockburger* test, because rape was a lesser included offense of killing in the course of a rape). The court in *Allen* reasoned that, "[u]nder this interpretation of *Blockburger*, predicate offenses which form the basis of other statutory offenses would always fail the *Blockburger* test." *Id.* More specifically, the court in Allen noted, "In the present case, the underlying bank robbery satisfies the 'crime of violence' element of §§ 924(c) and (j). By definition, therefore, there is no fact that must be proved in § 2113 that is different from the elements required to be proved for conviction under §§ 924(c) and (j)." Id.

In *Allen*, the court concluded, "In light of these conflicting views of how to apply the *Blockburger* test to two statutes where one can be a predicate offense for the other, we think it best to err on the side of leniency by finding that the *Blockburger* test has not been satisfied." *Id.* That meant that the § 2113 and § 924 offenses at issue in that case were, indeed, the "same offense" for double jeopardy purposes, even if they failed a straight-forward comparison of elements as defined by their respective statutes. *Id.*

Thus, under *Allen*, predicate offenses present a special corollary to the *Blockburger* "same elements" test drawn from the Supreme Court's application of the *Blockburger* test in *Whalen:* A predicate offense and a greater offense are the "same offense" under *Blockburger*, even if they each require proof of an element that the other does not in a straight-forward comparison of elements, because the predicate

offense is one way to satisfy the element of the greater offense that requires commission of a certain category of offense.

### 3. Application of Texas v. Cobb and Blockburger

#### a. Johnson's "discussion/interrogation" argument

■ Before applying the *Blockburger* "same elements" test to the charges in the two indictments in this case, the court believes that it must address Johnson's reading of *Texas v. Cobb* as establishing a test of the scope of the Sixth Amendment right to counsel that focuses on "the subject of the discussion/interrogation." This is so, at least in part, because this contention concerning the interpretation of *Texas v. Cobb* was the central argument that Johnson asserted at the oral arguments on August 2, 2002.

In support of this "subject of the discussion/interrogation" test, Johnson points out that, after holding "that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test," the Court in *Texas v. Cobb* opined,

> In this sense, we could just as easily describe the Sixth Amendment as "prosecution specific," insofar as it prevents *discussion* of charged offenses as well as offenses that, under *Blockburger*, could not be the subject of a later prosecution. And, indeed, the text of the Sixth Amendment confines its scope to "all criminal prosecutions."

*Id.* at 172–73 n. 3 (with emphasis as it appears in Johnson's Supplemental Suppression Brief and Argument at 8). Based on this language, and the application of the *Blockburger* test in the case before it, Johnson argues that what was significant to the Court's conclusion in *Texas v. Cobb* was "the subject of the discussion/interrogation" in the absence of counsel and the relationship of the "discussion/interrogation" to the "prosecution specific" right to counsel.

More specifically, Johnson argues that the focus in *Texas v. Cobb* was on whether the "discussion/interrogation" regarding the murders was "barred" by the Sixth Amendment, and consequently inadmissible. Because the Sixth Amendment right to counsel had not attached to the murders in *Texas v. Cobb*, Johnson argues, the *interrogation* regarding the murders was not barred, and for this reason the Court held that the evidence of the defendant's confessions to the murders, made in the absence of counsel, was admissible. Johnson contends that it is important that the Court did *not* hold that Cobb's statements were admissible because they were to be used in a trial of different offenses—the rule that Johnson contends was suggested only in *dicta* in *Moulton—but that the statements were obtained from an interrogation that did not violate the Sixth Amendment.* In her case, however, Johnson argues that McNeese deliberately elicited incriminating statements about the charged murders, in violation of her right to counsel, which should make the statements and all evidence derived from them inadmissible in the prosecution of the second indictment, which is, in her view, the "same prosecution." She concludes this argument as follows:

> Stated differently, if the interrogation itself violated the Sixth Amendment, then the statements are not admissible in the prosecution of other offenses, even if those other offenses are not the same under *Blockburger*. To hold otherwise would allow the government to knowingly or intentionally violate a defendant's Sixth Amendment right to counsel. The government could then pursue a new indictment for technically different, but otherwise indistinguishable offenses under the Federal Crimi-

nal Code's wide array of charging options under almost any set of facts.

Defendant's Supplemental Suppression Brief and Argument at 8–9.

Appealing as Johnson's rule and some of her supporting rationale might be, they do not follow from *Texas v. Cobb,* and, in other respects, are foreclosed by *Moulton.* First, in *Texas v. Cobb,* the Court defined precisely what it meant by "prosecution specific," explaining that the Sixth Amendment is " 'prosecution specific,' insofar as it prevents discussion of charged offenses, as well as offenses that, under *Blockburger,* could not be the subject of a later prosecution." *Texas v. Cobb,* 532 U.S. at 173 n. 3, 121 S.Ct. 1335. Thus, the Court clarified that the Sixth Amendment right to counsel extends beyond the offenses specifically charged to include other uncharged offenses that nevertheless could not be prosecuted subsequently without violating double jeopardy, and in that sense only, the right to counsel is not just "offense specific," but "prosecution specific." The Court's statement did not expand the taint of a Sixth Amendment violation beyond the "same offenses," as defined by *Blockburger,* even if the Sixth Amendment right to counsel had attached to some, but not all, of the offenses that were the subject of an interrogation or "prosecution." Moreover, nothing in footnote 3 in *Texas v. Cobb* suggests to this court that the Supreme Court was broadening the scope of the Sixth Amendment right to counsel to attach the right to any offenses that *could be* charged in a *single prosecution,* or that might arise from a *single transaction or set of factual circumstances.* Indeed, the Court's express rejection of the "factually-related" test in *Texas v. Cobb* demonstrates that the Court was not looking at the scope of the entire "prosecution" to which the defendant was or could be subjected in light of the facts of the case.

To put it another way, Johnson blithely disregards, but fails to parry, the main thrust of the decision in *Texas v. Cobb,* which was to decide what test should determine whether the burglary charges and the murder charges were the "same offense," so that the Court could then determine whether or not the Sixth Amendment right to counsel had attached to the murder charges not yet brought, as well as the burglary charges already filed, at the time that Cobb confessed to the murders during an interrogation in the absence of counsel. *See Texas v. Cobb,* 532 U.S. at 167, 121 S.Ct. 1335 (framing the first question on petition for *certiorari* as "whether the Sixth Amendment right to counsel extends to crimes that are 'factually related' to those that have actually been charged," and rejecting such a test). Johnson's analysis is misdirected: It was not the "subject of the discussion/interrogation" that was the focus of the Court's analysis, but the relationship between the charged and uncharged offenses that determined whether discussion of the uncharged offenses was permissible.

Second, contrary to Johnson's contentions, it is of no moment that the Court in *Texas v. Cobb* did *not* hold that Cobb's statements were admissible because they were to be used in a trial of different offenses. Nothing in the Court's analysis in *Texas v. Cobb* is addressed to the question of whether trial of the burglary and murder offenses in separate trials would have made any difference to the attachment of the Sixth Amendment right to counsel to the murder offenses as well as the burglary offenses, or that either party argued that it did. Nor does it appear that the Court in *Texas v. Cobb* was presented with the sort of factual scenario, at least considered in *Moulton,* in which the interrogation involved both charged and uncharged offenses, which might be tried separately. *See Moulton,* 474 U.S. at 179–

80 n. 16, 106 S.Ct. 477. Rather, in *Texas v. Cobb*, the Odessa police were specifically interrogating Cobb about the disappearance of Margaret Owings and her daughter, based on Cobb's father's statement to investigators that Cobb had confessed to him that he had killed the two missing persons. *See Texas v. Cobb*, 532 U.S. at 165–66, 121 S.Ct. 1335. Thus, Johnson commits the same errors that the *Texas v. Cobb* Court concluded undermined reliance on *Brewer* and *Moulton* as support for the "factually-related" test: The Court's opinion in *Texas v. Cobb* simply did not address the significance of the facts upon which Johnson relies, the parties did not, in any way, argue the questions she suggests were resolved by the Court's silence, and as a matter of law, "[c]onstitutional rights are not defined by inferences from opinions which did not address the question at issue." *Texas v. Cobb*, 532 U.S. at 169–70, 121 S.Ct. 1335.

On the other hand, in *Moulton*, the Supreme Court *did* address the question of whether evidence tainted by a Sixth Amendment violation as to charged offenses was admissible in a separate trial of different offenses. In *Moulton*, the Court concluded that "[I]ncriminating statements pertaining to *pending charges* are *inadmissible at the trial of those charges*, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel," *but* "[i]ncriminating statements *pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses*." *Moulton*, 474 U.S. at 180 n. 16, 106 S.Ct. 477 (emphasis added). In *Texas v. Cobb*, the Court clarified only what would constitute "other crimes ... as to which the Sixth Amendment right [has or] has not yet attached," choosing the *Blockburger* test as the ap-

propriate test to make that determination; the Court did not depart from, or reject as *dicta*, that portion of the ruling in *Moulton* that addresses the question of admissibility of evidence pertaining to "other crimes" when the evidence is tainted by a Sixth Amendment violation as to "pending charges."

Finding Johnson's "subject of the discussion/interrogation" rule lacks support in *Texas v. Cobb* and is contrary to *Moulton*, the court turns, next, to application of the *Blockburger* test to the offenses in this case to determine whether the charges in the second indictment were "other crimes ... as to which the Sixth Amendment right [had or] ha[d] not yet attached" at the time that McNeese elicited incriminating statements from Johnson.

### b. Comparison of statutory elements

■ As suggested in *Texas v. Cobb* and *Allen*, the court begins its comparison of the offenses charged in the two indictments based solely on their elements as defined by statute. *See Texas v. Cobb*, 532 U.S. at 174, 121 S.Ct. 1335 (comparing burglary, as defined by Texas Penal Code Ann. § 30.02(a), with murder, as defined by Texas Penal Code Ann. § 19.03(a)(7)(A)); *Allen*, 247 F.3d at 767–68 (looking first at the definition of the crimes on the face of the statutes, and concluding, "[l]ooking solely at the elements of the offenses at issue here," that the charges in Counts I and II of the indictment "arguably" were not the same offenses, but probing the question further).

■ *i. Elements of charges in the first indictment.* Counts 1 through 5 of the first indictment charge offenses that the court has described as "aiding and abetting the murder of witnesses" in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(2)(A), 1111, and 2. The substantive provisions defining the of-

fenses are §§ 1512(a)(1)(A) and (a)(1)(C), while the remainder of the cited provisions pertain to punishment, the definition of "murder," or aiding and abetting liability, respectively. Those substantive provisions provide as follows:

§ 1512. **Tampering with a witness, victim, or an informant**

(a)(1) Whoever kills or attempts to kill another person, with intent to—

(A) prevent the attendance or testimony of any person in an official proceeding; [or]

\* \* \* \* \* \*

(C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (2).

18 U.S.C. § 1512(a)(1)(A) & (C). "Prosecution under § 1512 is not limited to defendants who are guilty of the underlying federal offense which the victim reported or was expected to report." *United States v. Causey*, 185 F.3d 407, 421 (5th Cir.1999), *cert. denied*, 530 U.S. 1277, 120 S.Ct. 2747, 147 L.Ed.2d 1010 (2000). Where the defendant is charged with aiding and abetting such an offense, "the government must show that [the aider and abettor] intended to bring about [the victim's] murder ... and that he knew why and what the [actual killer] intended to do to [the victim]." *See United States v. Wilson*, 160 F.3d 732, 738 (D.C.Cir.1998) (considering the elements of aiding and abetting murder in violation of § 1512(a)(1)(A)), *cert. denied*, 528 U.S. 828, 120 S.Ct. 81, 145 L.Ed.2d 69 (1999).

 All three offenses defined by § 1512(a)(1) require proof beyond a reasonable doubt of every element of the crime of murder. *See United States v. Baker*, 262 F.3d 124, 133 (2d Cir.2001) (so holding and also describing the offenses defined in § 1512(a)(1) as "murder with intent to obstruct justice"). As to the offenses at issue here, those under the first and third subdivisions of § 1512(a)(1), § 1512(a)(1)(A) requires that the defendant murdered the victim (or here, pursuant to 18 U.S.C. § 2, aided and abetted the murder of the victim) "with intent to ... prevent the attendance or testimony of any person in an official proceeding." 18 U.S.C. § 1512(a)(1)(A); *see also United States v. Veal*, 153 F.3d 1233, 1249 (11th Cir.1998) (distinguishing among the requirements of the subdivisions of § 1512(a)(1)), *cert. denied*, 526 U.S. 1147, 119 S.Ct. 2024, 143 L.Ed.2d 1035 (1999). "In contrast, § 1512(a)(1)(C) ... contain[s] a different jurisdictional basis: the defendant must have committed the obstructive conduct *with the intent to* 'prevent' ... communication to a federal law enforcement officer or judge information relating to the commission or possible commission of a federal crime." *Veal*, 153 F.3d at 1249–50 (emphasis in the original); *see also* 18 U.S.C. § 1512(a)(1)(C). None of the § 1512(a)(1) offenses requires proof that the victim had *already* communicated to federal officials about the underlying offense for the § 1512(a)(1) offense to be "ripe," because "[a]n official proceeding need not be pending or about to be instituted at the time of the offense." *See* 18 U.S.C. § 1512(e)(1); *see also Causey*, 185 F.3d at 421–22 (discussing this "ripeness" question).

 Not only do the three subdivisions of § 1512(a)(1) involve different "jurisdictional bases," as suggested in *Veal*, they define three separate offenses, as the Fifth Circuit Court of Appeals explained in *United States v. Galvan*, 949 F.2d 777, 782 (5th Cir.1991). In *Galvan*, the court first

examined the plain wording of the statute, concluding as follows:

> Nothing in the statute suggests that a single attempted killing cannot, at the same time, violate more than one of the three subparts of § 1512(a)(1). As long as a defendant is charged with possessing the intent forbidden by the appropriate subparts, the plain language of the statute does not protect her from multiple punishments arising out of the same act. Likewise, we find no legislative history, nor are we cited to any, that expresses any view on whether multiple punishments for the same act of attempted killing are permissible.

*Galvan,* 949 F.2d at 782. The court then turned to an evaluation of " 'whether each provision requires proof of a fact which the other does not' "—*i.e.,* a *Blockburger* test of the elements of the offenses defined by the statutory subdivisions—and concluded that the offenses defined by subsections (A) and (C) were separate offenses:

> [I]n this case, each of the subsections requires proof of a fact different from the other. To support a conviction for violation of § 1512(a)(1)(A), the government must prove that the defendant intended to prevent the victim's attendance or testimony at an official proceeding. A conviction under § 1512(a)(1)(C) requires proof of a different fact; namely, that the defendant intended to prevent the victim from communicating information relating to the commission of a federal crime[.]

*Galvan,* 949 F.2d at 782. Thus, Counts 1 through 4 of the first indictment actually charge two alternative crimes of "murdering witnesses"; Count 5, however, charges only a § 1512(a)(1)(C) offense. *See supra,* note 2.

Turning specifically to the elements of the § 1512(a)(1) offenses charged in this case, the essential elements of a § 1512(a)(1)(A) offense are (1) the defen-

dant killed (or, pursuant to 18 U.S.C. § 2, aided and abetted the killing of) the victim, *see Baker,* 262 F.3d at 133 (murder is an essential element of all of the § 1512(a)(1) offenses); *see also* 18 U.S.C. § 1512(a)(1) (proscribing killing or attempting to kill another person with the intent identified in the pertinent subdivision); and (2) the defendant was motivated by a desire to prevent the possible attendance or testimony of "any person" in an "official proceeding." *See* 18 U.S.C. § 1512(a)(1)(A); *see also Veal,* 153 F.3d at 1249 (distinguishing a subsection (A) offense from a subsection (C) offense on the basis of the defendant's intent); *Galvan,* 949 F.2d at 782 (same). The "official proceeding" element of a § 1512(a)(1)(A) offense is defined by § 1515(a) "as a proceeding in any federal court, federal grand juries, congressional hearings, federal agencies, and interstate insurance." *See Veal,* 153 F.3d at 1249 (paraphrasing the statute). Because it is not necessary that such an "official proceeding" be pending or about to be instituted, *see* 18 U.S.C. § 1512(e)(1), proof of a § 1512(a)(1)(A) offense does not require explicit proof that the defendant knew that such proceedings were pending or about to be instituted. Rather, the "official proceeding" element is satisfied if the jury can reasonably infer from the circumstances that the defendant, fearing that a proceeding had been or might be instituted, murdered the witness with the intent to prevent the *possible* attendance or testimony of the victim in such a proceeding. *Cf. United States v. Kelley,* 36 F.3d 1118, 1128 (D.C.Cir.1994) (finding such a reasonable inference of intent to prevent possible attendance or testimony sufficient as to the offense of "corruptly persuading a person with the intent to influence their possible testimony in such a proceeding," which also has an "official proceeding" requirement, as that offense is defined by

§ 1512(b)(1)); *Veal,* 153 F.3d at 1250–51 n. 24 (citing *Kelley* ).

 The elements of a § 1512(a)(1)(C) offense are (1) the defendant killed (or, pursuant to 18 U.S.C. § 2, aided and abetted the killing of) the victim; (2) the defendant was motivated by a desire to prevent communication between the victim and federal law enforcement officers about an offense; and (3) the offense that was the subject of the victim's evidence could, in fact, be charged as a federal offense. *See Causey,* 185 F.3d at 422; *see also United States v. Stansfield,* 171 F.3d 806, 816 (3d Cir.1999) (*Stansfield II* ) (separating the "federal" and "law enforcement officer" parts of the second element into separate elements, in light of *United States v. Bell,* 113 F.3d 1345, 1349 (3d Cir.), *cert. denied,* 522 U.S. 984, 118 S.Ct. 447, 139 L.Ed.2d 383 (1997), as explained below). The government is not required to prove that the defendant knew that the offense that was the subject of the victim's evidence was federal in nature, only that the offense was, in fact, one that could actually be charged as a federal offense. *Stansfield II,* 171 F.3d at 817. Similarly, although an essential element of the crime defined by § 1512(a)(1)(C) "is that a defendant intend to prevent communication with *federal* officials," pursuant to § 1512(f)(2), " 'no state of mind need be proved' with respect to whether 'the law enforcement officer is an officer or employee of the Federal Government,' " *United States v. Emery,* 186 F.3d 921, 925 (8th Cir.1999) (emphasis added; quoting § 1512(f)(2)), *cert. denied,* 528 U.S. 1130, 120 S.Ct. 968, 145 L.Ed.2d 839 (2000), or "that the judge is a judge of the United States." *See* 18 U.S.C. § 1512(f)(2). Thus, "[i]t is sufficient for conviction that the victim was actually cooperating in a federal investigation or in the investigation of a federal crime, and that at least some part of a defendant's motive in killing that victim was to halt that cooperation." *Emery,* 186

F.3d at 925 (citing *United States v. Bell,* 113 F.3d 1345, 1349 (3d Cir.), *cert. denied,* 522 U.S. 984, 118 S.Ct. 447, 139 L.Ed.2d 383 (1997)).

 "[T]he definition of 'federal officials' under § 1512 includes not only federal law enforcement officers acting in their federal capacity, but also any officer or employee acting for or on behalf of the federal government as an adviser or consultant." *United States v. Baldyga,* 233 F.3d 674, 679–80 (1st Cir.2000) (citing 18 U.S.C. § 1515(a)(4)), *cert. denied,* —— U.S. ——, 122 S.Ct. 164, 151 L.Ed.2d 112 (2001). Local police officers may also be considered federal officials for purposes of this statute, if they were acting with federal agents as part of a joint investigation. *Cf. id.* at 680 (reaching this conclusion as to a § 1512(b)(3) offense, which also has a "federal officer" requirement, but based on definitions relating to all § 1512 offenses in § 1515(a)(4)(A)). The "federal officer" requirement of the second element may be inferred from the fact that the offense was federal in nature, plus any other "appropriate evidence." *See Baldyga,* 233 F.3d at 682; *Causey,* 185 F.3d at 422; *Bell,* 113 F.3d at 1349. The government must prove that at least one of the law enforcement officers with whom the defendant sought to prevent the victim's communication was a federal officer, but the government is not required to prove that the defendant knew or intended anything with respect to this federal involvement. *Bell,* 113 F.3d at 1349; *see also Stansfield II,* 171 F.3d at 816 (relying on *Bell* ). "[T]he government may carry this burden by showing that the conduct which the defendant believed would be discussed in these communications constitutes a federal offense, so long as the government also presents 'additional appropriate evidence' " concerning the involvement of a federal officer. *Id.* (quoting *United States v. Stansfield,* 101 F.3d

**1054**

909, 918 (3d Cir.1996) (*Stansfield I* )); *see also Stansfield II*, 171 F.3d at 816–17. As to the defendant's intent to prevent communication, it is sufficient if the government proves that the defendant *"believed that she was preventing communication, regardless of the actual likelihood that [the victim] would communicate information." Galvan*, 949 F.2d at 783.

■ Count 6 of the first indictment, which this court has described as "aiding and abetting the solicitation of the murder of witnesses," alleges a violation of 18 U.S.C. §§ 373(a)(1) and 2. Somewhat more specifically,[9] it alleges that the defendant aided and abetted another individual to solicit two named individuals to murder two witnesses to prevent them from testifying in a federal drug trial,—*i.e.*, a § 1512(a)(1)(A) offense—with the intent that those named individuals engage in such conduct and under circumstances "strongly corroborative" of that intent. In reference to a similar § 373 charge, the Eighth Circuit Court of Appeals explained, "To violate section 373 it is not necessary that [the defendant himself or herself] violate section 1512(a); only that he [or she] solicit someone else to do so." *United States v. Peterson*, 867 F.2d 1110, 1114 (8th Cir.1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Moreover, in determining whether a violation of § 373 has occurred, the focus is "not the result, but the defendant's intent." *United States v. Devorkin*, 159 F.3d 465, 467 n. 2 (9th Cir.1998) (citing *United States v. Korab*, 893 F.2d 212, 215 (9th Cir.1989), as noting that § 373 "requires a finding, not that a federal offense resulted, but that [the defendant] intended that acts constituting a federal offense result," and "respectfully declin[ing] to follow *Peterson*," because the court in *Peterson* based the defendant's sentence on attempted mur-

der, thus basing the sentence on the actual result of the defendant's conduct, not murder, which was the offense intended by the defendant), *cert. denied*, 526 U.S. 1011, 119 S.Ct. 1156, 143 L.Ed.2d 221 (1999).

■ As the Sixth Circuit Court of Appeals has explained,

> The federal crime of solicitation to commit a crime of violence punishes
>
> [w]hoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces or otherwise endeavors to persuade such person to engage in such conduct[.]

18 U.S.C. § 373(c) (Supp.1998). Although this court has not addressed the issue, other circuits have articulated guidelines to be used in solicitation cases. As for the intent element of the crime, the Third Circuit has noted that in order to establish that the defendant engaged in conduct in violation of § 373, "the government must prove by 'strongly corroborative circumstances' that the defendant had the intent that another person engage in conduct constituting a crime described in Title 18 . . . and that the defendant actually commanded, induced or otherwise endeavored to persuade the other person to commit the felony." *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir.1989). One factor strongly corroborative of intent, is "the fact that the defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense." *United States v. Gabriel*,

9. The language of the indictment is paraphrased more completely *supra*, in footnote 2.

810 F.2d 627, 635 (7th Cir.1987) (quoting S.Rep. No. 309, 97th Cong., 1st Sess. 183 (1982)). As for the other elements of the crime of solicitation, murder clearly constitutes "physical force" as contemplated by the § 373[.]

*United States v. Talley*, 164 F.3d 989, 996 (6th Cir.1999), *cert. denied*, 526 U.S. 1137, 119 S.Ct. 1793, 143 L.Ed.2d 1020 (1999).

 Parsing the statute and the comparatively limited case law discussing the elements of a § 373 offense, this court concludes that the elements of a § 373 offense are the following: (1) the defendant intended that another commit a violent felony, here specified as murder of a witness to prevent the witness from testifying, a violation of 18 U.S.C. § 1512(a)(1)(A); (2) the circumstances are strongly corroborative of that intent; and (3) the defendant actually solicited, commanded, induced, or otherwise endeavored to persuade another person to commit the violent felony. The case law discussing elements or proof of an offense under § 373 is not altogether clear on whether "circumstances strongly corroborative of intent" is an element, or a "burden of proof," but the statutory language concerning corroboration is clearly important. *See, e.g., Talley*, 164 F.3d at 996; *United States v. Rahman*, 34 F.3d 1331, 1337 (7th Cir.1994) (defining the "intent" element as involving a specified burden of proof, stating, "[T]he government had to show, with *'strongly corroborative'* circumstances, that Rahman intended for Henke to extort and rob Haik of $60,000.") (emphasis in the original). What is clear from the case law is that the defendant must both *intend* that another commit a violent felony and that the defendant must *actually* solicit the other person to commit that violent felony. *See id.; United States v. Thompson*, 130 F.3d 676, 688 (5th Cir.1997) ("On the second count, under 18 U.S.C. §§ 373 and 1114, a reasonable jury could conclude beyond a reasonable doubt that Thompson

had (1) solicited another (2) with intent (3) to kill a federal judge."), *cert. denied*, 524 U.S. 920, 118 S.Ct. 2307, 141 L.Ed.2d 166 (1998); *United States v. Polk*, 118 F.3d 286, 292 (5th Cir.1997) ("To obtain a conviction on Counts 2 and 3, the Government was required to prove that the defendant intended that another person violate Title 18, and that the defendant induced or 'otherwise endeavor[ed] to persuade' the other person or persons to commit the underlying crime. *See United States v. Razo-Leora*, 961 F.2d 1140, 1148 n. 6 (5th Cir. 1992). The phrase 'otherwise endeavors to persuade' should cover those cases in which a defendant seriously seeks to persuade another to engage in criminal conduct. S.Rep. No. 97–307, 97th Cong., 1st Sess. 183–84 (1982)."), *cert. denied*, 522 U.S. 988, 118 S.Ct. 456, 139 L.Ed.2d 390 (1997); *Rahman*, 34 F.3d at 1337 ("Thus, the government was required to show two elements. First, the government had to show, with *'strongly corroborative'* circumstances, that Rahman intended for Henke to extort and rob Haik of $60,000. Second the government had to show that Rahman solicited, commanded, induced, or otherwise tried to persuade Henke to carry out the extortion and robbery. *United States v. Buckalew*, 859 F.2d 1052, 1053 (1st Cir.1988).") It is also clear from the statutory language itself and, according to the decision in *United States v. Devorkin*, 159 F.3d 465 (9th Cir.1998), clear from legislative history, that "Congress intended to provide a significant penalty for solicitation, even if the underlying crime was not brought to fruition." *Devorkin*, 159 F.3d at 467. Therefore, completion of the solicited crime is *not* an element of the offense.

Finally, Count 7 of the first indictment charges Johnson with an offense that the court has described as "conspiracy to interfere with witnesses" in violation of 18 U.S.C. § 371. The conspiracy has several

alleged objectives: (1) killing or attempting to kill another person with the intent to prevent that person's attendance or testimony at an official proceeding, *i.e.*, a § 1512(a)(1)(A) offense, like the substantive offenses charged in Counts 1 through 4; (2) preventing communication by that person to a law enforcement officer of information relating to the commission or possible commission of a federal offense or violations of conditions of release pending judicial proceedings, *i.e.*, a § 1512(a)(1)(C) offense, like the substantive offenses charged in Counts 1 through 5; (3) knowingly using intimidation, physical force, threats, or otherwise corruptly to persuade another person with intent to influence, delay, or prevent testimony of that person at an official proceeding, *i.e.*, an offense in violation of 18 U.S.C. § 1512(b)(1); (4) hindering, delaying, or preventing communication to a law enforcement officer of information relating to the commission or possible commission of a federal offense or a violation of conditions of release pending judicial proceedings, *i.e.*, an offense in violation of 18 U.S.C. § 1512(b)(3); and (5) soliciting, commanding, inducing, and endeavoring to persuade a person to commit a violent felony with intent that such person engage in such conduct under circumstances strongly corroborative of that intent, *i.e.*, an offense in violation of 18 U.S.C. § 373, like the substantive offense charged in Count 6. *See* First Indictment, Count 7.

■■■■ The offense defined by § 371 is *the alleged agreement itself. United States v. Abboud,* 273 F.3d 763, 766 (8th Cir.2001). Thus, the well-settled elements of a § 371 conspiracy require the government to prove the following: (1) an agreement to achieve some illegal purpose; (2) the defendant had knowledge of the agreement; (3) the defendant knowingly became a party to the agreement; and (4) one of the conspirators performed some act in furtherance of the conspiracy. *See, e.g.,*

*United States v. Jolivet,* 224 F.3d 902, 908 (8th Cir.2000).

■■■■ However, a few further observations concerning the conspiracy charge in Count 7 may be pertinent to some of Johnson's arguments, below. As the Eighth Circuit Court of Appeals has explained,

> The [double jeopardy] clause ... prohibits government from dividing a single criminal conspiracy into multiple conspiracy convictions. *See Braverman v. United States,* 317 U.S. 49, 52–53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Bennett,* 44 F.3d 1364, 1369 (8th Cir.1995). The alleged agreement itself is the prohibited conduct targeted by the conspiracy statute, and there is only one offense where there is only one agreement. *See* 317 U.S. at 54, 63 S.Ct. 99.

*Abboud,* 273 F.3d at 766. On the other hand, as mentioned above, "Reciprocally distinguishable and independent conspiracies, regardless of their overlapping goals, do not offend *Blockburger* principles." *Holloway,* 128 F.3d at 1257–58 (citing *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)).

■■■■ Also, "[a] convicted defendant can be punished for an overt act, as well as for the conspiracy requiring an overt act, assuming the overt act itself is also a crime," because "[c]onspiracy and a substantive act taken as part of that conspiracy can be separate crimes." *United States v. Evans,* 272 F.3d 1069, 1088 (8th Cir.2001), *cert. denied sub nom. Roberts v. United States,* —— U.S. ——, 122 S.Ct. 1981, 152 L.Ed.2d 1038 (2002). Thus, the offenses charged in Counts 1 through 6 of the first indictment are separate crimes from the conspiracy to commit those—and other— offenses in Count 7 of the same indictment.

*ii. Elements of charges in the second indictment.* The court has already considered, in some detail, the elements of the offenses charged in the second indictment. *See Johnson II,* 225 F.Supp.2d at 998 (motion for bill of particulars); *Johnson III,* 225 F.Supp.2d at 1016–18, 1019–21 (motion to dismiss). Therefore, the court will only summarize here its prior conclusions regarding the essential elements of these offenses.

■■ Counts 1 through 5 of the second indictment charge Johnson with "murder while engaging in a drug conspiracy" in violation of § 848(e)(1)(A) ("conspiracy murder"). Although the statute states "engaging in" and "in furtherance of" alternatives, *see* 21 U.S.C. § 848(e)(1)(A), in Counts 1 through 5, Johnson has been charged *only* with the "engaging in" alternative. *See* Indictment in Case No. CR 01–3046–MWB, Counts 1–5. Therefore, the government *must* prove that Johnson "engaged in," *i.e.,* was guilty of, the "conspiracy" as an element of proof of the charges of "conspiracy murder." *See United States v. Jones,* 101 F.3d 1263, 1268 (8th Cir.1996) (stating, "To be convicted of killing while engaged in a drug conspiracy, one must kill while engaged in 'an offense punishable under section 841(b)(1)(A),' " quoting 21 U.S.C. § 848(e)(1)(A), and concluding that a drug conspiracy under § 846 is such an offense, if it involves a sufficient quantity of a controlled substance to trigger the penalty provisions in § 841(b)(1)(A)), *cert. denied,* 520 U.S. 1160, 117 S.Ct. 1346, 137 L.Ed.2d 504 (1997); *accord United States v. Walker,* 142 F.3d 103, 112 (2d Cir.) (stating the elements of "murder while engaging in a drug conspiracy" as including proof that the defendant was guilty of the conspiracy), *cert. denied,* 525 U.S. 896, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998); *see also United States v. Ray,* 238 F.3d 828, 832–33 (7th Cir.) (distinguishing the scope of "engaging in" from the scope of "working in furtherance of" a conspiracy or CCE), *cert. denied,* 532 U.S. 1045, 121 S.Ct. 2014, 149 L.Ed.2d 1015 (2001).

■■■ Thus, to find a defendant guilty of Counts 1 through 5 of the second indictment, the jury must find the following four elements beyond a reasonable doubt: "(1) that [the defendant] was guilty of the narcotics conspiracy as [described in the indictment]; (2) the drug conspiracy involved at least [the quantity of the controlled substance triggering punishment under 21 U.S.C. § 841(b)(1)(A) ]; (3) while engaging in the drug conspiracy involving the specified quantity of drugs, [the defendant] either intentionally killed or counseled, demanded, induced, procured, or caused the intentional killing of [the identified victim]; and (4) that the killing of [the victim] actually resulted from [the defendant's] actions." *United States v. Walker,* 142 F.3d 103, 112 (2d Cir.), *cert. denied,* 525 U.S. 896, 119 S.Ct. 219, 142 L.Ed.2d 181 (1998). Moreover, the essential elements of a drug conspiracy are necessarily essential elements of "murder while engaging in a drug conspiracy" by virtue of the first element of the charged offense. *See Jones,* 101 F.3d at 1268; *accord Ray,* 238 F.3d at 832–33; *Walker,* 142 F.3d at 112. The elements of a drug conspiracy are, in turn, the following: "(1) there was a conspiracy with an illegal purpose, (2) the defendant knew about the conspiracy, and (3) the defendant knowingly became part of it." *United States v. White,* 241 F.3d 1015, 1022 (8th Cir.2001); *United States v. Cordova,* 157 F.3d 587, 592 (8th Cir.1998) ("To establish a drug conspiracy, the government must prove the existence of an agreement between two or more persons to violate federal narcotics law, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the agreement.").

 Counts 6 through 10 of the second indictment charge "murder in furtherance of a CCE" ("CCE murder"), which is also "expressly prohibited by 21 U.S.C. § 848(e)(1)(A)." *United States v. Moore*, 149 F.3d 773, 779 (8th Cir.), *cert. denied*, 525 U.S. 1030, 119 S.Ct. 570, 142 L.Ed.2d 475 (1998). Counts 6 through 10 of the second indictment charge Johnson *only* with "working in furtherance of" the CCE. *See* Indictment in Case No. CR 01–3046–MWB, Counts 6–10. Thus, in contrast to the "conspiracy murder" charges in Counts 1 through 5 of the second indictment—which charged only the "engaging in" alternative under the statute—as to the "CCE murder" charges in Counts 6 through 10, the government does not have to prove that Johnson was actually guilty of the underlying CCE offense before it can prove that she is guilty of the CCE murder charges against her, only that the murder was "in furtherance" of the CCE. *See Ray*, 238 F.3d at 832–33 (distinguishing the scope of "engaging in" from the scope of "working in furtherance of" the underlying offense). Thus, the elements of the "CCE murder" charges in this case are the following: (1) the defendant was working "in furtherance" of a CCE; (2) the defendant intentionally killed (or counseled, commanded, induced, procured, caused, or aided and abetted the intentional killing of) an identified victim; and (3) there was a substantive connection between the killing and the CCE. *Cf. Moore*, 149 F.3d at 778 (stating these elements in terms of both the "engaging in" and "working in furtherance" alternatives); *Jones*, 101 F.3d at 1267 (identifying the elements of CCE murder also in terms of both alternatives). Although the government does not have to prove that Johnson was "engaging in" the CCE, the government *must* prove *the existence* of a CCE and that Johnson was "working in furtherance of" that CCE by virtue of the first element listed above. *See id.; see also* 21

U.S.C. § 848(e)(1)(A). The elements establishing the *existence* of a CCE are an enterprise involving (1) a violation of federal narcotics laws, (2) as a part of a continuing series of violations, (3) involving the concerted action of five or more persons, for which (4) at least one person was an organizer and supervisor of the enterprise, and (5) from which that person or those persons derived substantial income or resources. *See United States v. Maull*, 806 F.2d 1340, 1342 (8th Cir.1986) (elements of committing a CCE offense), *cert. denied*, 480 U.S. 907, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987); *see also Ray*, 238 F.3d at 833 (rejecting the defendant's argument that the jury instructions improperly defined a CCE, because they were cast in terms of "at least one person" rather than "a person" or "the defendant," because "the person engaged in the CCE and the person charged with committing murder in furtherance of the CCE need not be the same person").

 Before turning to the relationship between the charges in the first and second indictments, one point regarding the relationship between the two kinds of offenses charged in the *second* indictment requires further comment. The government states, "The first five counts [of the second indictment] are essentially lesser-included offenses of the second five counts, as proving the existence of a drug offense punishable under 21 U.S.C. § 848(b)(1)(A) satisfies one prong of proving the existence of a CCE." Government's Amendment to Notice of Intent to Use Evidence at 10 (citing *Rutledge*, 517 U.S. at 292, 116 S.Ct. 1241). The court notes, first, that in *Rutledge*, the Supreme Court did not hold that proving *any* drug offense punishable under 21 U.S.C. § 848(b)(1)(A) would satisfy one prong of proving the existence of a CCE; rather, as explained above, the Court held that the "in concert" element of

the CCE offense "requires proof of a *conspiracy* that would also violate § 846." *Rutledge*, 517 U.S. at 299, 116 S.Ct. 1241 (emphasis added). Moreover, the government's assertion too blithely overlooks the difference between the "engaging in" alternative under § 848(e)(1)(A) charged in the "conspiracy murder" charges in Counts 1 through 5—which requires proof of the defendant's *membership* in the conspiracy—and the "in furtherance" alternative charged in the "CCE murder" charges in Counts 6 through 10, which does not require proof of the defendant's membership in the CCE. *See Jones*, 101 F.3d at 1268 (recognizing that "engaging in" a conspiracy requires commission of the conspiracy offense); *see also Ray*, 238 F.3d at 832–33 (further distinguishing the "engaging in" and "in furtherance" alternatives); *Walker*, 142 F.3d at 112 (same). The question here is whether murder while "engaging in" a drug conspiracy is a lesser-included offense of murder "in furtherance of" a CCE.

 It is readily apparent that murder while "engaging in" a drug conspiracy is a lesser-included offense of murder while "engaging in" a CCE under *Blockburger*, by virtue of the clarification in *Rutledge* that the "in concert" and "conspiracy" elements of the substantive offenses are the same, and the absence of any other difference in the statutory alternative stating the substantive connection between the murder and the CCE or conspiracy. *See Rutledge*, 517 U.S. at 299, 116 S.Ct. 1241. It is, perhaps, also apparent that murder "in furtherance" of a conspiracy would be a lesser-included offense of murder while "engaging in" a CCE, at least if the only distinction between the "engaging in" and "in furtherance" alternatives is actual *membership* in the conspiracy or CCE, so that the only additional element required to prove the "greater" offense in such circumstances would be membership in, *i.e.*, "engaging in," the CCE, but the "lesser"

offense would not require "membership," even if both would require some "substantive connection" between the killing and the conspiracy or CCE. *Cf. Moore*, 149 F.3d at 778 (stating the elements in terms of both "engaging in" and "working in furtherance of," but requiring for either element that there be a "substantive connection" between the killing and the CCE or conspiracy).

The more difficult question is precisely the one presented by the charges in the second indictment in this case, in which the ostensibly "lesser" offenses—murders while "engaging in" a drug conspiracy—require the "greater" involvement, indeed, actual membership, in the agreement than the ostensibly "greater" offenses—murders "in furtherance of" a CCE, which do not require membership in, but only a substantive connection to, the CCE. *See Ray*, 238 F.3d at 832–33 (holding that a person could be guilty of "CCE murder" if the government established that the defendant was "working in furtherance of" the CCE, which reached "hired henchmen," not just "kingpins"; the government did not have to prove that the defendant was *both* "engaging in" and "working in furtherance of" the CCE); *see also Jones*, 101 F.3d at 1266 (in a "supervisee" case, citing with approval the holdings of *United States v. Cooper*, 19 F.3d 1154, 1164–65 (7th Cir.1994), that the "working in furtherance of" language would be superfluous if it referred only to "kingpins," and instead, that language reaches a "supervisee" who kills at the behest of the CCE kingpin, and *United States v. McCullah*, 76 F.3d 1087, 1103 (10th Cir.1996), that "the reach of section 848(e) extends to hired henchmen … who commit murder to further a drug enterprise in which they may not otherwise be intimately involved"). "Looking solely at the elements of the [§ 848(e)(1)(A)] offenses" charged here, Counts 1 through 5 "arguably" are not

**1060**

lesser-included offenses of Counts 6 through 10, because the conspiracy murder counts require an element, membership in the agreement, that the CCE murder counts do not, while the CCE murder counts require an element, the existence of a CCE, that the conspiracy murder counts do not. *Cf. Allen,* 247 F.3d at 768 (acknowledging such an "arguable" conclusion upon a strict *Blockburger* comparison of the elements of the bank robbery and firearms offenses pursuant to 18 U.S.C. § 2113(a) and (e) and 18 U.S.C. § 924(c)(1) and (j)(1), respectively). On the other hand, as in *Allen,* considering the "nature" of the ostensibly "lesser" offense, proof of murder "while engaging in" a drug conspiracy would constitute a sort of "predicate offense" that satisfies the "in furtherance of an illegal agreement" element of CCE murder, leaving only the elements establishing the existence of a CCE—that is, the elements beyond what is required to prove a mere drug conspiracy—as the additional elements required to prove CCE murder. *Cf. id.* Therefore, albeit not in the direct line the government seems to rely on, the conspiracy murders charged in Counts 1 through 5 of the second indictment are lesser-included offenses of the CCE murders charged in Counts 6 through 10.

***iii. Are the offenses "the same" under Blockburger?*** The court turns, next, to the more pressing question of whether the offenses charged in the two indictments are "the same" under *Blockburger,* such that Johnson's Sixth Amendment right to counsel applied to the charges in the second indictment at the time that the court has found that McNeese violated those rights as to the charges in the first indictment. Johnson raises several "same offense" arguments, which the court shall consider in turn.

***c. Johnson's reliance on factual relationships***

■■■ One of the contentions that Johnson asserts is key to determining whether the two indictments against her charge the "same offenses" is her reading of *Texas v. Cobb* as expanding the inquiry to an examination of the facts giving rise to the charges against her. She premises this contention, in part, on the Supreme Court's statement in *Texas v. Cobb* "that the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *See Texas v. Cobb,* 532 U.S. at 173, 121 S.Ct. 1335. The court's reading of this language, however, is that it does not open the door to comparison of offenses based on the particular facts involved in the charges against a particular defendant. Rather, in context with the prior reference to attachment of the Sixth Amendment right to counsel "only to charged offenses," and the following reference to the *Blockburger* test, in the very next sentence of the opinion, *see id.* at 172–73, 121 S.Ct. 1335, this court takes the statement upon which Johnson relies to mean only that the Sixth Amendment right to counsel may extend beyond an offense *already charged* to an offense *subsequently charged,* if that subsequently charged offense is the "same offense" under *Blockburger* as the one originally charged. The statement does not imply a case-specific examination of the facts underlying the charges being compared.

Moreover, the application of the *Blockburger* test in *Texas v. Cobb* compared the offenses in separate charging instruments, to determine whether they were "the same offense," only by examining the elements of the offenses as defined by their respective statutes. Thus, in *Texas v. Cobb,* the Court found that burglary, as defined by Texas Penal Code Ann. § 30.02(a), included the factual element of entry into or

continued concealment in a habitation or building, which was not required by the murder statute in question, while the murder statute, Texas Penal Code Ann. § 19.03(a)(7)(A), required the factual element of murder of more than one person during a single criminal transaction, which was not required by the burglary statute. *See Texas v. Cobb*, 532 U.S. at 174, 121 S.Ct. 1335. There was no hint in the Court's application of the *Blockburger* test in *Texas v. Cobb* that the particular circumstances involved in the two kinds of charges against the defendant, which included the fact that the defendant had murdered a woman and her baby in the course of burglarizing their home, played any part in the analysis. Limitation of the analysis to the offenses as defined by statute is also in keeping with the Court's grounds for rejecting the "factually-related" test and the " 'closely related to' or 'inextricably intertwined with' test" offered by the dissenters, on the ground that such tests "would defy simple application," and impose clairvoyant knowledge of the facts under investigation on law enforcement officers if they were to avoid trespassing on the right to counsel. *See id.* at 173–74, 121 S.Ct. 1335.

The court is also unpersuaded by most of Johnson's "same offense" arguments, because the court finds that, ultimately, they amount to no more than attempts to revitalize a "factually-related" test under a different guise. For example, her first arguments in briefing devoted specifically to the question of whether McNeese's evidence could be used as to the charges in the second indictment assert (1) that "[p]roof of the murders charged in the original indictment necessarily establishes the elements of the killings as charged in the second indictment, making the killings as charged in the second indictment the same offenses as the killings charged in the first indictment"; (2) that the conspiracy charged in Count 7 of the first indict-

ment is also the "same offense" as the offenses charged in the second indictment, because "it is clear that Count 7 charges a conspiracy by drug conspirators to kill persons in order to allow for the carrying on of the drug conspiracy, the same offenses charged in the second indictment under a different label"; and (3) "that the trial court cannot impose multiple convictions and sentences for variations of murder when only one person was killed." *See* Defendant's Supplemental Suppression Brief and Argument at 3–4. Each of these arguments is plainly premised on the fact that all of the charges arose out of the same circumstances, and thus are "factually-related" or "factually-interwoven," because each is premised on the contention that the facts of the "murders" are the same for all of the offenses. The Court in *Texas v. Cobb* has plainly rejected such contentions.

Moreover, applying *Blockburger* as required by *Texas v. Cobb*, while the "killings" may all be the same, the offenses in each indictment at least "arguably" have elements not required for proof of the offenses in the other indictment. As explained in more detail above, the first five charges in the first indictment, charging violations of § 1512(a)(1), require not only "killings," but killings "with intent" to prevent the victims from testifying in an official proceeding or communicating with federal officers, *see* 18 U.S.C. § 1512(a)(1)(A) (prohibiting killings with intent to prevent attendance or testimony in an official proceeding) & (C) (prohibiting killings with intent to prevent communication with federal officers), while the murder charges in the second indictment do not specifically require such intent. *See* 21 U.S.C. § 848(e)(1)(A). At the same time, the charges in the second indictment require a substantive connection between the killings and a conspiracy or CCE, which the

charges in the first indictment do not require.

Similarly, Count 7 of the first indictment does not even require proof of a killing, or either a drug conspiracy in violation of § 846 or a CCE in violation of § 848(c), which all of the charges in the second indictment do require, but does require an element that the charges in the second indictment do not, which is a conspiracy to murder witnesses *for a reason prohibited by* §§ 1512(a)(1)(A), (a)(1)(C), (b)(1), (b)(3), or 373. In other words, the conspiracy at issue in Count 7 of the first indictment and all of the conspiracies (or CCEs) in the second indictment are "[r]eciprocally distinguishable and independent conspiracies, regardless of their overlapping goals," and thus, "do not offend *Blockburger* principles." *Holloway,* 128 F.3d at 1257–58 (citing *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946)).

Finally, even where the same conduct—in this case, killing—is the basis for all of the charges, federal law does not necessarily prohibit punishment pursuant to more than one statute, if the conduct violates more than one statute. *See Dixon,* 509 U.S. at 708, 113 S.Ct. 2849 (expressly overruling the same-conduct test from *Grady* ); *Holloway,* 128 F.3d at 1257 ("A single transaction comprising a conspiracy can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause"); *see also Allen,* 247 F.3d at 767–68 (because "the Double Jeopardy Clause does no more than prevent a sentencing court from prescribing greater punishment than a legislature intended, . . . imposition of multiple punishments for the same underlying circumstances does not violate the Constitution as long as Congress intended it," and even where one offense can be a predicate offense of the other, "we still must consider the ultimately dispositive question of whether Con-

gress intended to impose cumulative sentences for simultaneous violations of each of the statutes"). Thus, even where punishment for different offenses is premised, even to a substantial degree, on the same conduct, punishment of that conduct does not make the offenses the "same."

### d. *Johnson's reliance on Red Bird*

■■ Johnson expressly relies on the most recent application of the *Blockburger* test by the Eighth Circuit Court of Appeals, in *United States v. Red Bird,* 287 F.3d 709 (8th Cir.2002). The application of the *Blockburger* test in that case, however, is as abbreviated as the application of that test in *Texas v. Cobb.* After quoting the *Blockburger* test from *Texas v. Cobb,* the court in *Red Bird* concluded as follows:

> The district court found, and we agree, that the tribal rape charge has "identical essential elements when compared with the later federal [rape] charges filed." *United States v. Red Bird,* 146 F.Supp.2d 993, 999 (D.S.D.2001). Therefore, we hold that pursuant to the test set forth in *Texas v. Cobb,* the federal and tribal complaints charge the same offense for Sixth Amendment purposes.

*Red Bird,* 287 F.3d at 715. Nevertheless, Johnson draws from *Red Bird,* or the district court decision below, *United States v. Red Bird,* 146 F.Supp.2d 993 (D.S.D.2001), which the Eighth Circuit Court of Appeals affirmed, various conclusions supporting her argument that the offenses charged in the two indictments here are "the same."

First, Johnson argues that *Red Bird* counsels that this court must disregard "elements pertaining to jurisdictional issues" in its application of *Blockburger.* She contends that "all of the elements in § 1512(a) and § 848(e)(1)(A) that do not pertain to the actual murders are merely necessary to provide the government with

jurisdiction so that murder can be prosecuted as a federal offense," and disregarding these "jurisdictional" elements, the offenses are "the same," and her Sixth Amendment right to counsel applied to all of them. Although there is some support for Johnson's contention that the elements distinguishing the § 1512(a)(1) murders from the § 848(e)(1)(A) murders are "jurisdictional," *see Veal,* 153 F.3d at 1249–50 (the offenses defined in §§ 1512(a)(1)(A) and (C) have different "jurisdictional" bases), the differences are more than merely requirements to satisfy jurisdictional limitations on federal prosecutions: Rather, as explained in *Galvan,* the offenses defined in the two subsections of § 1512(a)(1) at issue here define *different offenses* involving different elements, including different motivations. *Galvan,* 949 F.2d at 782–83. The elements for the murder offenses in § 848(e)(1)(A), including the elements pertaining to circumstances and motivations, are at least defined differently from the circumstances and motivations defined in the § 1512(a)(1) offenses. Even if the "federal nexus" for each kind of offense is disregarded—that is, violation of federal drug laws for § 848(e)(1)(A) offenses, and the fact that the interference is with federal investigations or proceedings for § 1512(a)(1) offenses—the elements defining the circumstances and motivations behind the various offenses still would not necessarily be the same.

Next, relying on the district court's decision in *Red Bird,* 146 F.Supp.2d at 1001, Johnson contends that the offenses should be considered "the same" for Sixth Amendment purposes if they are "of the same nature," *i.e.,* they all charge killing, just as the tribal and federal offenses at issue in *Red Bird* both charged rape. This argument may have carried substantial weight in *Red Bird, where there were no other essential elements to distinguish the offenses,* and it may carry some weight here, at least when construed in light of

*Allen,* below. However, as a bald proposition, relying on the "nature" of the offenses here to establish that they are all "the same," because they involve the killing of the same persons, Johnson's rule is no more than a resurrection of defunct "same transaction," "same conduct," "same course of conduct," "same evidence," and "overlapping proof" arguments rejected under *Blockburger,* lacking as it does proper consideration of all of the essential elements of the offenses. *See Blockburger,* 284 U.S. at 304, 52 S.Ct. 180 (same transaction), *Gardner,* 65 F.3d at 85 (same course of conduct); *Dixon,* 509 U.S. at 708, 113 S.Ct. 2849 (expressly overruling the same-conduct test from *Grady* ); *Turner,* 130 F.3d at 818; *McIntyre,* 35 F.3d at 340; *Iannelli,* 420 U.S. at 785 n. 17, 95 S.Ct. 1284 ("substantial overlap"); *Rodgers,* 18 F.3d at 1429 (same evidence).

### e. *"Predicate offense" analysis*

Finally, as to applications of the *Blockburger* test, the court turns to what this court has described as the "predicate offense corollary" explained in *Allen.* Although Johnson does not expressly rely on *Allen,* she does argue, in her Reply to Government's Supplemental Memorandum Regarding Admissibility of Evidence, that some of the offenses charged in the first indictment—the § 1512(a)(1) offenses and the § 371 conspiracy—are "lesser-included offenses" of the § 848 offenses charged in the second indictment, in the sense that they fully satisfy certain elements of the later-charged offenses.

 **i. *Is the § 371 conspiracy a predicate offense of the § 848 offenses?*** Johnson's contentions that the § 371 conspiracy in the first indictment is the "same offense" as the § 848 offenses in the second indictment begin with her premise that the elements and overt acts of the offenses charged in the two indictments

are interrelated. More specifically, she contends that the first three elements of the § 371 offense establish the first three elements of the § 846 conspiracy underlying the § 848 charges in the second indictment, and the killings required by the charges in the second indictment establish the overt acts required for the § 371 offense, even if more must still be proved to establish the charges in the second indictment. Conversely, she contends that the overt acts alleged to be in furtherance of the § 371 conspiracy in the first indictment are the basis for the § 848(e)(1)(A) offenses in the second indictment.

These arguments fail, quite simply, because the conspiracy required for the § 848 conspiracy murder and CCE murder offenses in the second indictment must be a *§ 846 conspiracy to violate § 841(a)* involving drug quantities triggering punishment under § 841(b). *See Jones*, 101 F.3d at 1268; *cf. Rutledge*, 517 U.S. at 294, 116 S.Ct. 1241 ("The 'in concert' element of [the] CCE offense was based on the same agreement as the § 846 conspiracy," and, therefore, the § 846 conspiracy was a lesser-included offense of the CCE offense). However, the § 371 conspiracy charged in Count 7 of the first indictment does *not* charge a § 846 conspiracy at all, because it does not charge a conspiracy to commit *any* violation of § 841. Instead, it charges a conspiracy to violate §§ 1512 and 373. *See Abboud*, 273 F.3d at 766 (the offense defined by § 373 is the alleged agreement itself). In other words, Johnson's argument misses the fact that the "agreement" underlying the conspiracy charge in the first indictment has nothing whatever to do with the "agreement" common to the § 848(e)(1)(A) murder charges in the second indictment. Because of this difference in the agreements, the § 371 offense cannot be a lesser-included offense of the § 848 offenses in the second indictment, even if the offenses Johnson allegedly conspired to commit in the § 371 conspiracy

charge in the first indictment might be part of the continuing series of violations establishing one element of the § 848 charges in the second indictment, assuming, further, that those offenses had actually been committed. Thus, even under a "predicate offense" analysis, the § 848 offenses charged in the second indictment do not charge the "same offenses" as the § 371 offense charged in the first indictment.

*ii. Are the § 1512 offenses predicate offenses of the § 848 offenses?* Johnson is on much more solid ground as to the relationship between the § 1512(a)(1) offenses in the first indictment and the § 848(e)(1)(A) offenses in the second indictment. She argues that proof of the § 1512(a)(1) murders charged in the first indictment would necessarily establish that the same murders were committed while "engaging in" or "in furtherance of" a drug conspiracy or CCE, as charged in the second indictment, leaving only the additional elements concerning the existence of the conspiracy or CCE to be established to prove the § 848 murders charged in the second indictment. Similarly, as explained above, in *Allen*, the court considered this same sort of relationship between offenses, casting the inquiry in terms of whether one offense *could satisfy* an element of another offense requiring the commission of a certain category of offenses, which in *Allen* was "crimes of violence." *See Allen*, 247 F.3d at 768. If so, the court found, "[b]y definition … there is no fact that must be proved in [the first offense] that is different from the elements required to be proved for conviction under [the second offense]." *Id.* In such circumstances, the court concluded, the first offense was a "predicate offense" of the second, and, under *Blockburger*, the offenses were "the same offense." *Id.*

The first question here, in light of *Allen,* is whether the § 1512(a)(1) offenses charged in the first indictment *could satisfy*—that is, *be one way of proving,* or *one kind of "predicate offense" establishing—* an element of the § 848(e)(1)(A) offenses involving the murder of the same individuals. The specific requirement that the § 1512(a)(1) offenses must meet to be "predicate offenses" of the § 848(e)(1)(A) offenses involving the murders of the same individuals is that they must establish that the murders were, in statutory terms, "in furtherance of" or "while engaging in" a drug conspiracy or CCE, *see* 18 U.S.C. § 848(e)(1)(A), or, in the terms used in the statement of the elements of a § 848(e)(1)(A) offense in *Moore,* that they had a "substantive connection" to the drug conspiracy or CCE. *See Moore,* 149 F.3d at 778 (stating the third element of § 848(e)(1)(A) offenses as proof that there was a "substantive connection" between the killing and the conspiracy or CCE); *Jones,* 101 F.3d at 1267 (same). No precise conduct is specified to establish the necessary connection in either the statute or the case law. *Compare Allen,* 247 F.3d at 768 (no specific crime was identified as a predicate "crime of violence" in § 924; rather, any "crime of violence" would satisfy the element). Thus, the court must determine what is required to prove the necessary "engaging in," "in furtherance of," or "substantive connection" between the murders and the drug conspiracy or CCE.

In *Moore,* the Eighth Circuit Court of Appeals stated that its "brief summary of the trial evidence ma[d]e clear ... that Moore procured and Wyrick committed Kerns's murder working in furtherance of [Moore's] CCE." *Moore,* 149 F.3d at 778. The evidence summarized included evidence that "Wyrick distributed drugs and performed strong-arm and collection work for Moore," as well as the following:

In the late 1980's, Moore ruined two kilograms of cocaine he had bought from Price on credit for $72,000. Moore obtained $70–80,000 of marijuana on consignment from Kerns, intending to pay Price with the sale proceeds. When Kerns demanded payment for the marijuana, Moore tried to shift responsibility for the debt to Childress and then decided to kill Kerns. Moore first planned to have Wyrick kill Kerns and then Childress kill Wyrick, so the killings would look like a drug deal gone bad, but Childress refused to participate. Wyrick agreed to murder Kerns for $10,000, knowing that Moore's dispute with Kerns concerned a drug debt related to their marijuana trafficking. Moore and Wyrick recruited Terry Wright to help commit the murder. While Moore planned the murder, Wyrick obtained a pistol. On June 27, 1989, Wyrick and Wright entered Kerns's house on a pretense. Wyrick fired several times, hitting Kerns. Wyrick and Wright left in Wright's car, and Wyrick threw pieces of the firearm out the car window. Steve Lehman disposed of their clothing. Wyrick told Lehman he had just murdered Elmont Kerns.

*Moore,* 149 F.3d at 777. Similarly, in *Jones,* the Eighth Circuit Court of Appeals concluded that "[t]here was ample evidence to support the jury's verdict that [Jeffrey] Barnes murdered Duon in the furtherance of a CCE." *Jones,* 101 F.3d at 1267. That evidence consisted of the following:

Russell Barnes testified that "[Jeffrey Barnes] said [Duon] tried to jack them for some work, some of the dope. And they killed him." Trial Tr. at 788. Fellow inmate Thomas Carter testified that Barnes had told him that Barnes and some friends "got ripped off," by Duon, and that "[Barnes] killed him" in response. *Id.* at 1267. Pastor Looney

testified that Barnes told him, "We did that," regarding Duon's murder. *Id.* at 1267.

*Jones,* 101 F.3d at 1267. Thus, *Moore* involved a murder to avoid a drug debt owed by the principal of the CCE, while *Jones* involved a murder in retaliation for stealing drugs from members of the CCE.

■ As alleged here, murders committed to prevent the witnesses from testifying or communicating with federal officials about drug-trafficking activities of one of the principals of the alleged CCE, Dustin Honken, or to prevent testimony or disclosure about his activities that might land him back in jail, as charged in the § 1512(a)(1) counts of the first indictment, if proved, would bear at least as close a connection to the conspiracy or CCE alleged in the counts of the second indictment as was proved in *Moore* or *Jones.* Thus, the court finds that the § 1512(a)(1) murders charged in the first indictment could, as a matter of law, satisfy the "murder while engaging in" or "murder in furtherance of" elements of the § 848 conspiracy murders or CCE murders of the same individuals alleged in the second indictment. Indeed, "[b]y definition ... there is no fact that must be proved in [§ 1512(a)(1)(A) or (C)] that is different from the elements required to be proved for conviction under [§ 848(e)(1)(A)]." *Cf. Allen,* 247 F.3d at 768 (comparing bank robbery in violation of § 2113 and use of a firearm in a crime of violence involving murder in violation of §§ 924(c) and (j)).

In resistance to this argument, the government conceded that there might be many different ways to establish that the murders were "substantively connected" to the drug conspiracy or CCE, and may have gone so far as to concede that murders in violation of § 1512(a)(1) could satisfy that requirement, but nevertheless contended that the murder charges in the first indictment were not lesser-included or predicate offenses of the murder charges in the second indictment, because the charges in the second indictment did not *require* proof of the intent behind the murders that is required by the § 1512(a)(1) murder charges in the first indictment. This position may be justified by the sort of narrow application of *Blockburger* undertaken in the first instance in Allen, but it fails to consider the question posed in the second instance in Allen, which was whether one offense *could satisfy* an element of another. *See Allen,* 247 F.3d at 768. There is no requirement in Allen that the lesser or predicate offense be the "exclusive means" of committing the greater offense, or even a statutorily recognized means of committing the greater offense, even though it was so specified by statute in *Whalen. See Whalen,* 445 U.S. at 694–95, 100 S.Ct. 1432 (finding that rape and killing in the course of a rape were the "same offense" under *Blockburger,* where killing in the course of a rape was expressly defined as a species of felony murder under the laws of the District of Columbia).

The government also contends that the court's analysis in Allen is flawed, because the court had initially identified two facts as distinguishing the § 924 offense from the § 2113 offense, "namely, that a firearm was used or carried during the commission of a violent crime and that a murder occurred by use of the firearm," *see Allen,* 247 F.3d at 767, but the court only considered whether the § 2113 offense satisfied the first of those elements. *Id.* Specifically, the government contends that the court determined that a bank robbery, as defined by § 2113, was a "crime of violence" within the meaning of the firearms charge in § 924(c) and (j), but did not consider whether the § 2113 offense satisfied the requirement of the § 924 offense that required "murder ... by use of a firearm." This argument misses the point, because it

places the offenses at issue in the wrong relationship: In *Allen,* the § 2113 offense was the lesser or predicate offense, so that it did not have to satisfy every element of the greater offense, the § 924 firearm offense, only the "crime of violence" element of that greater offense; at the same time, "there [wa]s no fact that must be proved in § 2113 [the predicate offense] that [wa]s different from the elements required to be proved for conviction under §§ 924(c) and (j) [the greater offense]," so that the second comparison required by *Blockburger*—whether the first offense *also* required proof of a fact that the second one did not—demonstrated no difference between the charged offenses. *See Allen,* 247 F.3d at 768. The element that the court in Allen initially considered might be exclusive to the § 2113 offense was the "taking of bank property by force or violence or intimidation," but because the § 2113 offense as a whole satisfied the "crime of violence" element of the § 924 offense, that supposedly different element of the predicate offense merged into the proof of the "crime of violence" element of the greater § 924 offense, leaving nothing additional or different to prove to establish the § 2113 offense. Id.

The government also contends that the offenses here are different from the "felony murder" offenses at issue in both *Whalen* and *Allen.* This argument is also unpersuasive, notwithstanding that the court in Allen described the greater offense at issue in *Whalen* as "felony murder," with a predicate felony of "rape." *Id.* Even acknowledging that the § 924 offense at issue in Allen could also be considered a "felony murder" offense, and that the § 2113 offense was the predicate felony, that hardly distinguishes Allen from the present case, because the court's analysis in Allen did not turn on whether or not the greater offense was "felony murder" and the lesser offense was the predicate felony, but on whether the lesser offense could

satisfy an element of the greater offense that was defined only in terms of a *category* of conduct. *See id.* (examining whether the § 2113 could satisfy the "crime of violence" element). Here, as in Allen, the § 1512(a)(1) offenses charged in the first indictment could satisfy the element of the § 848 offenses that is also defined only in terms of a category of conduct: murder while "engaging in," "working in furtherance of," or having a "substantive connection to" the drug conspiracy or CCE.

Applying the analysis in *Allen,* which this court has dubbed the "predicate offense corollary" to *Blockburger,* the § 1512(a)(1) offenses in the first indictment *are,* as a matter of law, the "same offenses" as the § 848(e)(1)(A) offenses in the second indictment involving the murders of the same individuals. Consequently, under *Texas v. Cobb,* Johnson's Sixth Amendment right to counsel attached to all of the offenses charged in both indictments at the time that McNeese deliberately elicited incriminating statements from Johnson in violation of that right, even though the charges in the second indictment were not pending or formally charged at that time. *See Texas v. Cobb,* 532 U.S. at 173, 121 S.Ct. 1335. As a further consequence of this conclusion, all of McNeese's evidence suppressed as to the charges in the first indictment must also be suppressed as to the charges in the second indictment. *Id.*

### D. Johnson's Additional Grounds For Suppression

As mentioned at the outset of the court's legal analysis, Johnson asserts several other grounds, in addition to her *"Texas v. Cobb"* or *"Blockburger"* arguments, in support of her motion to suppress McNeese's evidence as to the charges in the second indictment. These arguments include, among other issues, the following contentions: (1) that McNeese deliberately

interfered with her attorney-client relationship by making derogatory remarks about the legal abilities of her principal counsel and attempting to supplant her attorney's advice with his own; (2) that McNeese interrogated her in the absence of counsel, and without obtaining any waiver of her right to counsel, in violation of her *Miranda* rights, *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); and (3) that government counsel violated disciplinary rule DR7–104, which concerns communication by counsel with a party known to be represented by other counsel regarding the subject of representation.

Because the court has concluded that the evidence in question must be suppressed as to the second indictment on the basis of violation of Johnson's Sixth Amendment right to counsel, in resolution of the *"Texas v. Cobb"* or *"Blockburger"* issue, the court need not reach Johnson's additional contentions. Nevertheless, although the court will not engage in a detailed analysis of each of Johnson's further grounds for suppression, the court has considered them, and finds them unpersuasive. Thus, Johnson's motion to suppress will be denied as to each of these alternative grounds.

### III. CONCLUSION

Just as the government ultimately lost the battle it started with regard to use of the jailhouse informant's evidence as to the first indictment against Johnson, this court concludes that the government also loses the battle on the second front that the government opened concerning the use of the informant's evidence as to charges in a subsequent indictment. The defendant's victory, however, is based on the success of only one prong of her counterattack, her assertion that the second indictment charges only the "same offenses" as the first indictment, as to which her Sixth Amendment right to counsel had already attached at the time that the jailhouse informant deliberately elicited incriminating statements from her. Furthermore, her "same offense" argument succeeds only on the strength of one contention: That the charges of murdering witnesses in violation of § 1512(a)(1) in the first indictment constitute predicate offenses of the § 848 offenses of murdering the same individuals while engaging in a drug conspiracy or in furtherance of a CCE charged in the second indictment. However narrow the grounds for victory, the result is that the informant's evidence must be suppressed as to the charges in the second indictment to the same extent that it was previously suppressed as to charges in the first indictment.

THEREFORE, the government's Amendment to Notice of Intent to Use Evidence from the jailhouse informant, seeking an order permitting use of such evidence in Case No. CR 01–3046–MWB, is **denied**, and the defendant's responsive motion to suppress such evidence as to the charges in the second indictment is **granted**, to the extent previously stated with reference to the first indictment in *Johnson I*, 196 F.Supp.2d at 902–04 (N.D.Iowa 2002), on the basis of a violation of Johnson's Sixth Amendment right to counsel, but **denied** as to all other contentions.

**IT IS SO ORDERED.**